(Decided 10th June, 1875.)

---

## FRANCIS B. LONEY, and others, *vs.* GEORGE BAILEY and WILLIAM M. CALDWELL.

*In an action against a Partnership firm, all the Partners required to be Joined as defendants—Practice when two or more persons are sued in a Joint action—Judgment by default—When judgment by Default will not be Stricken out—Certificate need not state the reasons for a Party's Affirming, instead of taking an Oath—Insufficient ground for Arresting a judgment—When the receipt by a Creditor of a Dividend upon a Claim filed by him in an Equity proceeding, will be no bar to his recovery in an Action at law, of the balance of his Debt after deducting the Dividend.*

On the 6th of April, 1872, an action of assumpsit was instituted against a partnership firm composed of five members, namely : Loney, Neale, Price, Gunn and Thomas; and the proceedings were conducted under the practice Act of 1864, ch. 6. The first summons against all the defendants was returnable to the April return day, and was served on Loney, Price and Thomas, and returned *non sunt* as to Neale and Gunn. Thomas appeared on the return day by attorney. The summons was renewed against Neale and Gunn and made returnable to the next May Term, 1872; it was served on Neale and returned *non est* as to Gunn. A renewed summons was issued

against Gunn returnable to the next June return day, and it was served. On the 9th of May, 1872, judgment by default for want of appearance was rendered against Loney and Price; and on the 3rd of June, 1872, a similar judgment was rendered against Neale; and on the 8th of June, 1872, judgment by default, for want of plea and affidavit of defence, was rendered against Thomas; and on the 1st of July, 1872, judgment by default for want of appearance was entered against Gunn. These judgments were all entered during the May Term, 1872, under the provisions of the Act of 1864, ch. 6. The four defendants against whom judgments by default for want of appearance had been entered, appeared by attorney on the 12th of August, 1872, and prayed for a jury trial in taking the inquisition. An inquisition was taken by jury against all the defendants on the 23rd of September, 1873. Before the inquisition was taken, but after the expiration of the term at which the judgments by default were entered, and after the lapse of more than a year from the date of their rendition, the defendants made motions to strike out the judgments by default, and urged several exceptions to the proceedings, all of a technical and dilatory character, disclosing no meritorious defence and not pretending that the judgments were procured by fraud, surprise or mistake. These motions and exceptions were all overruled by the Court. After the inquisition was taken the defendants moved in arrest of judgment thereon, and assigned several grounds for the motion; among them that all the judgments by default were invalid; or if the first entered were not invalid, that all subsequently entered were so; and that even if such judgments be treated as valid, there should have been separate inquisitions taken on each judgment by default. Subsequently the defendants moved to quash the inquisition for irregularity. The Court overruled the motion in arrest, as also the motion to quash, and entered a general judgment on the inquisition against all the defendants. On appeal it was HELD.

1st. That the plaintiffs being required to join all the partners as defendants in the first process sued out, all being within the jurisdiction of the Court, they were entitled to pursue them all in the same cause, although by renewed process, to final judgment.

2nd. That it was competent to the Court to enter one final judgment against all the defendants thus sued, notwithstanding there had been several interlocutory judgments by default previously entered.

According to the practice in this State, if two or more persons are sued in a joint action, the plaintiff is entitled to proceed against any one or more of the defendants, upon service of process against them, notwithstanding there may be others not served. He can proceed to judgment against those

served with process, without danger of losing his remedy against those not served.

A judgment by default, regularly entered, is decisive of the right of the plaintiff to recover; the amount of the recovery being left to be subsequently ascertained.

A judgment by default will not be stricken out after the expiration of the term at which it was entered, unless it can be shown that it was obtained by fraud, surprise or mistake, or that there is some statutory authority for so doing.

The Court, in the absence of any fact to the contrary, will presume that the officer before whom an affidavit was made, was satisfied that the party had such scruples as to entitle him to affirm instead of taking an oath in the usual form. The certificate need not state that the party affirming "was conscientiously scrupulous as to the taking an oath."

The failure to serve the defendants in an action with copies of the declaration, as required by the rules and practice of the Court, constitutes no ground for arresting the judgment.

A bill was filed by one member of a firm against his co-partners, praying the appointment of a receiver to take charge of the partnership effects, and for adjustment of partnership affairs  The creditors were not parties.  A receiver was appointed who took charge of all the partnership effects, and in his report to the Court reported a proposition of a party to purchase the entire stock of goods and debts due the firm, for a certain price, and prayed the Court to accept and authorize the sale.  With this report was filed an agreement between the partners and a large number of the creditors wherein the proposed sale was assented to and recommended; and by said agreement, the creditors, executing the same under their hands and seals, covenanted and agreed with the partners, that, in consideration that the latter would assent to the sale, and of the dividends to be received from the proceeds thereof, the former did and would forever acquit, discharge and release the firm, and the several members thereof individually, from any and all balance or balances that might remain due on their several claims.  The partners all assented to the sale, and it was authorized, and the receiver was directed to give the usual notice to the creditors of the firm to file their claims, properly authenticated, on or before a certain day, preparatory to a proper distribution of the assets of the firm.  Under this notice certain creditors who had not signed the agreement aforesaid, filed their claim and received a dividend thereon.  Prior to receiving such dividend the same

creditors instituted an action at law to recover the amount of their claims In this action it was HELD:

That the plaintiffs were entitled to recover the full amount of their claim, les· the dividend received thereon; that the filing of the claim, under the circumstances, and the receipt of the dividend, did not bind the plaintiffs to abide by and perform the agreement between the defendants and certain other of their creditors.

APPEAL from the Superior Court of Baltimore City.

The following is added to the statement of the case as presented in the opinion of the Court.

*First Exception.* At the taking of the inquisition, the plaintiffs proved their claim, and admitted that they had received the sum of $892.65 the dividend thereon, allowed in the case of *Thomas vs. Loney, et al.*, in the Circuit Court of Baltimore City; and filed a paper by which it was agreed that the parties might refer in the Court of Appeals to the printed record in the case of *Loney vs. Penniman*, recently tried in that Court; and read the Exhibits B, C, D, and E, from that record subject to the objections The defendants then offered in evidence the record of the case of *Thomas vs. Loney, et al.*, in the Circuit Court of Baltimore City, and particularly the papers marked Exhibits B, C, D, and E. The plaintiffs objected to the admissibility of said record in evidence, and the same was excluded by the Court. The defendants excepted.

*Second Exception.* The defendants prayed the Court to instruct the jury: That upon the record evidence offered by the defendants in the case, the plaintiffs are debarred from recovering beyond nominal damages, it being conceded that they appeared in the equity suit of *Thomas vs. Loney, et al.*, and received their dividend of assets under that proceeding.

This instruction the Court (DOBBIN, J.) refused to give, and the defendants excepted. The judgment being for the plaintiffs, the defendants appealed.

The cause was argued before BARTOL, C. J., STEWART, GRASON, MILLER and ALVEY, J.

*B. C. Barroll*, for the appellants.

*Edward Otis Hinkley*, for the appellees.

ALVEY, J., delivered the opinion of the Court.

This was an action of assumpsit, instituted in the Superior Court of Baltimore City, on the 6th of April, 1872, and the proceedings were conducted under the practice Act of 1864, chapter 6. The action was against a partnership firm, composed of five members, namely, Loney, Neale, Price, Gunn and Thomas, all of whom were made defendants in the original action.

The first summons against all the defendants, was returnable to the April return day, and was served on Loney, Price and Thomas, and returned *non sunt* as to Neale and Gunn. Thomas appeared on the return day by attorney. The summons was renewed against Neale and Gunn, and made returnable to the next May Term, 1872, and which was served on Neale, and returned *non est* as to Gunn. A renewed summons was issued against Gunn, returnable to the next June return day, and which was served; and thus all the original defendants were served with process.

On the 9th of May, 1872, judgment by default, for want of appearance, was rendered against Loney and Price; and on the 3rd of June, 1872, a similar judgment was rendered against Neale; and on the 8th of June, 1872, judgment by default, for want of plea and affidavit of defence, was rendered against Thomas; and lastly, on the 1st of July, 1872, judgment by default, for want of appearance, was entered against Gunn. Thus interlocutory judgments were entered against all the defendants, and these judgments were all entered during the May

term, 1872, under the provisions of the Act of 1864, chapter 6.

The four defendants against whom judgments by default for want of appearance had been entered, the other defendant having previously appeared, appeared by attorney on the 12th of August, 1872, and thereupon prayed for a jury trial in taking the inquisition. An inquisition was taken by jury against all the defendants, on the 23rd day of September, 1873, and upon which a general judgment was entered against them all, as i⁀ there had been no severance in the action by reason of the non-service of the original summons

Before the inquisition was taken, but after the expiration of the term at which the judgments by default were entered, and after the lapse of more than a year from the date of their rendition, the defendants made motions to strike out these judgments by default, and urged several exceptions to the proceedings, all of a technical and dilatory character, disclosing no meritorious defence, and not pretending that the judgments were procured by fraud, surprise or mistake; and which motions and exceptions were all overruled by the Court below,—rulings in which we entirely concur.

In the case of *Green vs. Hamilton*, 16 *Md.*, 318, this Court held that a judgment by default, regularly entered, is as binding as any other, as far as respects the power and jurisdiction of the Court in declaring that the plaintiff is entitled to recover, though the amount of recovery may remain to be ascertained by a jury. So far then as the question of the right of the plaintiff to recover is concerned, the judgment by default is decisive of that, leaving the amount to be subsequently ascertained; and to the extent that such judgment is decisive, it stands upon the same footing of all other final judgments.

Such being the established principle, the motions to strike out the judgments in this case came too late, not

being filed until the 23rd of September, 1873, more than a year after the expiration of the term at which the judgments were entered. Until the lapse of the term, the judgments remained subject to the control of the Court; *Rutherford vs. Pope*, 15 *Md.*, 579; but after the expiration of the term at which they were entered, unless it were shewn that they were obtained by fraud, surprise or mistake, or there be some statutory authority for so doing, the Court could not rightfully deprive the plaintiffs of the benefit of such judgments. *Sherwood vs. Mohler*, 14 *Md.*, 564; *The Bank U. S. vs. Moss*, 6 *How.*, 31. To hold otherwise would go far to destroy all stability of the judgments of the Courts.

After the inquisition was taken, the defendants moved in arrest of judgment thereon, and assigned several grounds for the motion.

1. The first ground alleged is, that it does not appear that any claim was filed with the declaration, as required by the Act of 1864, ch. 6. In regard to this, it is sufficient to say, that it does appear from the record that a claim was filed in the cause, with the declaration. Whether annexed to the declaration, or endorsed by the clerk as filed, the record does not show, but the law requires nothing of the sort to be done. Besides, this is a mere formal matter not reached by motion in arrest. *Code, Art.* 75, *secs.* 8 *and* 9.

2. The second ground assigned for the motion is, that the affidavit to the plaintiffs' claim is insufficient, because it states that the party making it affirmed, without stating that he was conscientiously scrupulous as to taking an oath. But, without deciding whether such an objection as this can properly be raised on a motion in arrest of judgment, and especially after judgment by default, we think the affidavit sufficient. It is true, an affirmation can only be made by a person having conscientious scruples of taking an oath; *Code, Art.* 1, *sec.* 9; and, in the

absence of any fact to the contrary, we must presume that the officer before whom the affidavit was made, became satisfied that the party had such scruples as to entitle him to affirm, instead of taking an oath in the usual form.   It was the duty of the officer to satisfy himself in reference to the fact, and we must suppose he discharged this duty, before taking the affirmation and giving the certificate. It is not the practice, nor is it necessary, to state in the certificate the reason for the party's affirming, instead of taking the oath.

3.  The third, fourth and fifth grounds assigned, amount to one and the same thing, and that is, that the defendants were not served with copies of the declaration, as required by the rules and practice of the Court.   But, whatever may have been the fact in regard to this matter, it can constitute no ground for arresting the judgment. It is a matter extrinsic the record, and it is only in regard to matter or defects appearing on the face of the record, that a motion in arrest can be made.

4.  The remaining grounds assigned in support of the motion, assert the invalidity of all the judgments by default; or if the first entered be not invalid, that all subsequently entered are so; and that even if such judgments be treated as valid, there should have been separate inquisitions taken on each judgment by default.

Before the Act of 1839, chapter, 14, now embodied in the Code, Art. 49, sec. 10, in an action against a partnership firm on a partnership 'contract not under seal, all those who were partners at the time of the contract, were *required* to be joined as defendants, the contract being *joint*; and the omission to join all the partners as defendants could be taken advantage of by plea in abatement, or if it expressly appeared on the face of the declaration, or other pleading of the plaintiff, that the party omitted was still living, as well as that he jointly contracted, the non-joinder could be taken advantage of by demurrer or

motion in arrest of judgment.   1 *Chitty Pl.*, 46; *Kent vs. Holliday*, 17 *Md.*, 387.   This is still the well settled law, unaffected by the statute referred to.   But there was another consequence attending the omission of a partner or joint debtor in an action upon the joint contract, and that was, that the judgment recovered against one or more of such joint debtors merged and extinguished the debt as against those not joined in the action, and if they were subsequently sued on the original joint contract, they could plead in bar the former judgment recovered against their co-contractors.   *Moale vs. Hollins*, 11 *Gill & John.*, 11; *Robertson vs. Smith*, 18 *John.*, 459; *King vs. Hoare*, 13 *M. & W.*, 494.   It was to prevent this latter consequence that the statute, to which we have referred, was passed. That statute declares that a judgment rendered against one or more partners, or one or more persons jointly liable on any contract, less than the whole number jointly bound, shall not work an extinguishment or merger of the cause of action, as respects the liability of the partners or persons not bound by such judgment, but that they shall remain liable to be sued as if their original responsibility had been joint and several.

It is plain therefore that the plaintiffs in this action were required to join all the partners as defendants in the first process sued out, all being within the jurisdiction of the Court, as the omission to do so would have been at the risk of having the suit defeated by plea in abatement for the non-joinder.   And having been required to join them all, were they not entitled to pursue them all in the same cause, although by renewed process, to final judgment? and if so, was it not competent to the Court to enter one final judgment against all the defendants thus sued, notwithstanding there had been several interlocutory judgments by default previously entered?

But it is contended by the counsel of the defendants that, as both the contract and the action were joint, there

should have been no judgments by default entered against any of the defendants, until all were served with process, as they were all interested in making a common defence. And this is certainly the general rule at the common law. By that law, if two or more persons are sued in a joint action, the plaintiff cannot proceed to obtain judgment against one alone, but must wait until the others have been served with process, or until the other defendants have been proceeded against as far as the law authorizes for the purpose of forcing an appearance. In England, formerly, the plaintiff in such action was required to proceed to outlaw the defendants, who had not been served before he could proceed against those who appeared. 1 *Tidd's Pr.*, 130 ; *Barton vs. Petit*, 7 *Cr.*, 194 ; *Robertson vs. Smith*, 18 *John.*, 481. But such practice has never obtained in this State. According to our practice, the plaintiff is entitled to proceed against any one or more of the defendants in a joint action, upon service of process against them, notwithstanding there may be others not served. In the case of a joint contract, before the statute, the plaintiff was often restrained by prudential motives from proceeding against some of the defendants in the absence of others, because of the effect of the judgment upon the original debt; but since the passage of that statute, there exists no such cause for delay. The plaintiff can proceed to judgment against those served with process, without danger of losing his remedy against those not served. And such was the course of proceeding in this case. It is insisted, however, that if a valid judgment can be entered against some in the absence of the other defendants in such an action as the present, the effect of such judgment is to sever the right of action, and that, by the terms of the statute, the plaintiff is required to institute new and independent actions, as upon a several contract, against those defendants not bound by the first judgment. But it should be observed that the statute

makes no change in the nature of the contract; it only prevents a judgment against some of the joint debtors from merging and extinguishing the obligation of others, and makes those others liable to be proceeded against, as if their original responsibility had been joint and several. It prescribes no particular mode of proceeding, and we can perceive no reason whatever for requiring new and independent actions to be brought against those defendants in the original joint action who were not served with process, and against whom no judgment was entered. On the contrary, reason, justice and convenience, are all against it. The plaintiff is entitled to the full benefit of the original action, and that in many instances, may be of the utmost importance, as means of preventing the bar of the Statute of Limitations. There is no principle, or established practice that we are aware of, to prevent the mode of proceeding adopted in this case. Although judgments by default had been severally entered, and at different stages of the cause, yet, as there was no final judgment rendered against any of the parties, and their liability all depended upon the one joint contract, there was great propriety in including all the defendants in the one inquisition of damages, and rendering thereon one final judgment against them all;—thus making the final judgment conform, not only to the nature of the contract, but to the action as originally instituted against the defendants.

We think, therefore, that the motion in arrest of judgment was properly overruled; and, for the same reasons, we think the Court below was right in overruling the motion to quash the inquisition.

At the taking of the inquisition, the defendants tendered two exceptions; one to the admissibility of evidence, and the other to the refusal by the Court of an instruction to the jury, as to the extent of damages to which the plaintiffs were entitled ; the two exceptions, however, present one and the same question. And that question is, whether

the plaintiffs were entitled to recover more than nominal damages, having filed their claim and received a dividend thereon, in an equity cause pending in the Circuit Court of Baltimore City, wherein the assets of the defendants' firm were being administered by a receiver, under the authority of the Court.

The bill in that case was filed by one of the present defendants against his co-partners, praying the appointment of a receiver to take charge of the partnership effects, and for adjustment of partnership affairs. The creditors were not parties. A receiver was appointed, who took charge of all the partnership effects, and in his report to the Court, reported a proposition of a party to purchase the entire stock of goods and debts due the firm, for a certain price, and prayed the Court to accept and authorize the sale. With this report was filed an agreement between the partners and a large number of their creditors, wherein the proposed sale was assented to and recommended ; and by said agreement, the creditors, executing the same under their hands and seals, covenanted and agreed with the partners, that, in consideration that the latter would assent to the sale, and of the dividends to be received from the proceeds thereof, the former did and would forever acquit, discharge and release the firm, and the several members thereof individually, from any and all balance or balances that might remain due on their several claims. The partners all assented to the sale, but the agreement between them and the creditors, while signed by a large number of the latter, was never signed by the plaintiffs in this action. The proposed sale was authorized by the Court, and the receiver was directed to give the usual notice to the creditors of the firm to file their claims, properly authenticated, on or before a certain day, preparatory to a proper distribution of the assets of the firm. It was under notice thus given, that the present plaintiffs filed their claim, and received a dividend thereon of

$892.65, which was admitted and credited on the claim sued on in this cause; and the question is, whether the filing the claim under the circumstances, and the receipt of the dividend, will bind the plaintiffs to abide by and perform the agreement between the defendants and certain other of their creditors?

There was certainly no obligation, either legal or moral, on the present plaintiffs to release and discharge the defendants, from all liability on their contract, upon receipt of only a part of what was due. The plaintiffs had a perfect right to claim their dividend from, or proper proportion of the assets of the defendants in the hands of the receiver; there being no conveyance by the debtors, stipulating for releases as a condition upon which creditors could be allowed to participate in the distribution of the assets, the partners all being insolvent. There is no principle better established in the law, than that the payment of a less sum of money than the whole amount due, *without a release*, is no satisfaction of the plaintiff's claim. *Geiser vs. Kershner*, 4 *Gill & John.*, 305; *Hardy vs. Coe*, 5 *Gill*, 189; *Jones vs. Ricketts*, 7 *Md.*, 108. In this case there is no release, nor anything that can operate as a release.

In the case of *Allen vs. Roosevelt*, 14 *Wend.*, 101, the very point here involved was ruled upon by the Court. There it was held, that the acceptance by a creditor of a dividend, under *a voluntary assignment* made by a debtor, without the concurrence of his creditor, and without an agreement on the part of the creditor, *to accept the assignment in satisfaction of his debt*, was no bar to an action for the balance of the debt after deducting the dividend; and it was further held, that, in such case, no agreement for the discharge of the debt was obligatory, unless it assumed the form of a *technical release*.

Applying this well settled principle, the rulings of the Court below, in rejecting the equity proceedings as evi-

dence, and in refusing the prayer of the defendants for instruction to the jury, as to the effect of the distribution received thereunder, we think entirely correct; and, upon the whole case, this Court is of opinion that the judgment appealed from should be affirmed.

*Judgment affirmed.*

(Decided 10th June, 1875.)