QUEEN CITY ENTERPRISES, INC. *v.*
INDEPENDENT THEATRES, INC.

[No. 161, September Term, 1962.]

388

Decided *January 16, 1963.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*Philip J. La Macchia* for appellant.

*James H. Heller,* with whom were *Sher, Oppenheimer & Harris* and *Lee M. Hydeman* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

This action *ex contractu* to recover money due and owing under a film-booking contract presents multiple questions arising out of the "sale in bulk" of the business of operating a drive-in motion picture theatre.

The plaintiff is Independent Theatres, Inc. (Independent or creditor). The defendants are Queen City Enterprises, Inc. (Queen City or purchaser) and Baland Corporation (Baland or seller). Independent is a motion picture booking agent. Queen City is the present owner of the Potomac Drive-In Theatre in Cumberland. And Baland was the former owner of the business.

Under contract between Independent and Baland, the former undertook to book films for the latter for a fee of $50 per week payable in advance. The contract further provided for cancellation of the agreement by either party on 120 days notice, and that in the event of a sale of the theatre, Baland should pay for all fees accruing within the cancellation period whether services were rendered or not.

In February of 1961, Queen City notified Independent, pursuant to the notice requirements of the bulk sales statute, that it was about to purchase the drive-in theatre as a going business and that it would assume payment of Baland's account in the sum of $1900 (or such sum as might be due if

that be incorrect) and pay it direct to the creditor. The following day Independent advised Queen City that it was due $1900 for services, plus a penalty of $800 computed under the cancellation clause, but would accept 50% of the penalty, or a total of $2300. Accordingly, in the list of creditors attached to the bill of sale for the theatre business the amount listed as due Independent was increased from $1900 to $2300.

In the final settlement statement covering the sale and transfer of the theatre business to it, Queen City, as a part of the consideration, covenanted and agreed with Baland that it would pay all of its accounts payable (aggregating $8557.09 and including the account due Independent) and save the seller harmless from the payment of any of such claims. But the purchaser never paid any part of the amount due under the film-booking contract.

In the suit (brought by Independent against both Queen City and Baland about a month after final settlement), the plaintiff claimed that the defendants were jointly and severally liable to it in the sum of $2700 for fees and penalties. Although Baland was summoned, it failed to plead or otherwise defend the action, and a default judgment was entered against it for $1985.50. Queen City filed a general issue plea and when Independent subsequently moved for summary judgment, opposed the motion primarily on the ground that it was not a party to the booking contract and was without knowledge as to whether the claim was lawfully due and owing.

In due course, the court granted the motion and entered a summary judgment for $2700, and, although it was temporarily set aside on a motion of Queen City raising similar questions to those before us on appeal, the judgment was promptly reinstated for the same amount. After the appeal had been entered (and within the time limited by Maryland Rule 18 c), the purchaser-appellant filed a motion seeking the preparation and filing of a "statement of the grounds for its decision and the method of determining the damages," but the lower court denied the motion.

The questions presented on appeal are: (i) whether the

lower court erred when it denied the motion for a memorandum of grounds for decision; (ii) whether the provisions of the Sales in Bulk Act (Code, 1957, Art. 83, §§ 97-101) permit a creditor of the seller to proceed personally against the purchaser; (iii) whether the assumption by a purchaser in a bulk sale transaction of the debt of a seller and promise to pay it directly to the creditor created an independent undertaking which was enforceable by the creditor against the purchaser; (iv) whether the purchaser and seller may be treated as jointly liable within the meaning of the provisions of Code (1957), Art. 50, § 6; (v) whether the entry of the default judgment was *res judicata* to the entry of a summary judgment in excess of the amount of the default judgment; and (vi) whether the entry of the default judgment was a bar (under the doctrine of *res judicata*) to the relitigation of the same claim in the summary judgment proceeding.

(i)

Since the summary judgment proceeding was not heard *ex parte,* the purchaser-appellant had a right to move for the filing of a memorandum (see *Alvey v. Alvey,* 225 Md. 386, 171 A. 2d 92), and the lower court should have complied with the requirements of Rule 18 c. In this instance, however, we shall decide the case without remanding it for the preparation and filing of the requested statement of the grounds for decision and the method of determining damages.

(ii)

Nor do we deem it necessary, since the case is decidable on other questions posed by the appeal, to consider whether the provisions of the Sales in Bulk Act permit a creditor of the seller to proceed personally against the purchaser. As we see it, the purchaser was bound to pay the debt of the seller to the creditor (or at least so much thereof as it covenanted and agreed to pay) because it not only assumed payment of the debt but also undertook in writing to pay it as a part of the purchase price and actually received credit on account thereof in the final settlement.

(iii)

On this third point the contention is that there was no consideration to support an undertaking which was enforceable by the creditor against the purchaser, but such is not the case. In fact it appears that two forms of consideration were present in the transaction: one, the benefit accruing to a third person (the seller); the other, the forbearance of the creditor to exercise its rights under the bulk sales statute.

A benefit to a third person is a sufficient consideration for an agreement or promise. It is well established that the consideration supporting a promise "may be given to a promisor or to some other person" and it "may be given by the promisee or by some other person." *Humbird v. Humbird,* 162 Md. 582, 586, 160 Atl. 623 (1932); *Swift v. Allen,* 211 Md. 588, 128 A. 2d 260 (1957); *Westpark, Inc. v. Seaton Land Co.,* 225 Md. 433, 171 A. 2d 736 (1961); *General Builders v. MacArthur,* 228 Md. 320, 179 A. 2d 868 (1962). See also Restatement, *Contracts,* § 75. And see *Corbin on Contracts,* §§ 124 and 779, where it is said that a promisee has a right against the promisor even though no consideration moved from the promisee to the promisor.

Forbearance to institute a legitimate legal proceeding is also good consideration for a promise by a third party to pay the debt of another. *O'Neill v. Frederick Trading Co.,* 223 Md. 301, 164 A. 2d 537 (1960). For cases relating to both principles—benefit to third person and forbearance to sue—see *Wolf v. Maryland Trust Co.,* 179 Md. 577, 20 A. 2d 153 (1941), and *Kolker v. Gorn,* 202 Md. 322, 96 A. 2d 475 (1953).

Other than this, it appears that Independent was also a creditor-beneficiary under the agreement between the purchaser and the seller for the payment of the outstanding debts of the latter. The rules governing the exercise of the rights of creditors under third party beneficiary contracts are set out in *Marlboro Shirt Co. v. Am. Dis. Tel. Co.,* 196 Md. 565, 77 A. 2d 776 (1951). See also the unsigned case note to the *Marlboro Shirt* case in 12 Md. L. Rev. 231. And as to who is a creditor-beneficiary and his rights, see *Mackubin v. Curtiss-Wright Corp.,* 190 Md. 52, 57 A. 2d 318 (1948).

(iv)

Since it appears that the seller and purchaser were jointly liable for the payment of the debt due and owing the creditor, the contention that the entry of the default judgment against the seller worked an extinguishment of the liability of the purchaser is not sustainable. The claim is that because the liabilities of the respective defendants were dissimilar in origin they were several or joint and several in nature and the defendants could not therefore be treated as jointly liable under the provisions of § 6 of Art. 50, but even if this were so, the result would not be different.

At most the contention seems to be a distinction without a difference, for even if it is assumed that the defendants, who had separately agreed in diverse undertakings made at different times to pay the same debt, were not jointly liable as on a joint contract, it is clear they could have been sued separately and could have had separate judgments entered against them, and, in effect that is exactly what happened in this case.

The statute — Art. 50, § 6 — in addition to providing, in derogation of the common law, that a judgment rendered against one or more persons who are jointly liable on a contract (even though they be less than the whole who are so bound) shall not work an extinguishment of the debt as to such other persons, further provides that such persons (as are not bound by the prior judgment) shall remain liable as if the original responsibility had been joint and several. Obviously, the purpose of the statute was to extend the common law rule governing actions against joint and several obligors to suits against joint obligors. And, despite the argument of the purchaser-appellant to the contrary, this was the effect of the holding in *Westheimer v. Craig*, 76 Md. 399, 25 Atl. 419 (1892). In that case, where the facts were strikingly similar to those in this case, this Court, in ruling that the entry of a default judgment against a codefendant "in no manner affected" the right of the plaintiff to a judgment against the other defendant, further pointed out that the right of a plaintiff to recover separate judgments against joint obligors and joint debtors could no longer be questioned in

the light of the decisions in *Barker v. Ayers,* 5 Md. 202 (1853); *Thomas v. Mohler,* 25 Md. 36 (1866); *Loney v. Bailey,* 43 Md. 10 (1875); and *Gott v. State, Use of Barnard,* 44 Md. 319 (1876). We hold that the entry of separate judgments against the respective obligors was not improper, but, of course, there can be but one satisfaction of the debt.

### (v) and (vi)

The contentions of the purchaser-appellant with respect to the application of the principles of *res judicata* are likewise without substance.

Relying on *Keitz v. National Paving Co.,* 214 Md. 479, 134 A. 2d 296 and 136 A. 2d 229 (1957), it is contended that the default judgment against the seller barred the creditor from obtaining a judgment against the purchaser in excess of the amount fixed by the default judgment. We do not agree. For *Keitz* was a tort action concerning joint tortfeasors, whose liability arose out of the same injury to person and property, and where each tortfeasor owed the others a mutual duty of joint contribution; while this is a contract action involving joint debtors and obligors, whose liability arose out of separate contracts, and where one obligor had a contractual obligation to indemnify and save the other harmless. And, although it appears that no part of the cancellation penalties were included in the default judgment, the omission does not seem to have any bearing on the question.

It is also apparent that the reliance on *res judicata* in asserting that the entry of the default judgment was a bar to the relitigation of the same claim in the summary judgment proceeding also lacks merit. In the absence of an express direction for the entry of a final judgment based on an express determination that there is no just reason for delay, Rule 605 a specifically provides that an order or decision "which adjudicates less than all the claims [in an action where more than one claim for relief is present] shall not terminate the action as to any of the claims." Thus, it is clear that the default judgment was not a "final" judgment within the meaning of the rule. And since *res judicata* is not applicable where the judgment is not a final one, *Surrey Inn, Inc. v. Jennings,*

215 Md. 446, 138 A. 2d 658 (1958), it is equally clear that the doctrine of *res judicata* has no application in this case.

While we shall affirm the judgment in favor of Independent against Queen City in part, we think it should not have been for $2700 but for $2300. This is the amount Independent stated it would accept in payment of the Baland account. This is the amount Independent subsequently advised Queen City was "the correct amount due." And this is the amount Queen City "covenanted and agreed" to pay direct to Independent for and on behalf of Baland and to indemnify and save it harmless from the payment thereof. Accordingly, a judgment will be entered for $2300 with interest from June 15, 1962. Rule 875 a.

> *Judgment reversed in part and affirmed as to the remainder in the amount of $2300, with interest from June 15th, 1962; costs to be paid by appellant.*