**In re Robert Arthur WETZLER, Debtor.**

**Bankruptcy No. 94–5–5595–SD.**

United States Bankruptcy Court,
D. Maryland.

Jan. 11, 1996.

Ronald J. Drescher, Towson, Maryland, for debtor.

E. Duncan Gretchell, Michael L. Jennings, Ann Ramsey Bergan, McGuire, Woods, Battle & Boothe, Baltimore, Maryland, for Eddie Cantor.

## MEMORANDUM OPINION ON CLAIMS FOR EQUITABLE SUBROGATION

E. STEPHEN DERBY, Bankruptcy Judge.

The controlling question for decision is whether an equitable subrogation claim against two guarantors who are husband and wife may reach property held by the guarantors as tenants by the entirety. If the answer is affirmative, two dependent issues must be resolved. First, among the several co-guarantors, how is the share of joint liability determined that may be satisfied from entireties property. Second, are the co-guarantors accountable for attorney fees incurred by the holder of the subrogation claim. These questions were argued by counsel at a hearing on undisputed facts.

## I. Facts.

Robert Arthur Wetzler, the Debtor, is an investor in nonresidential, commercial property. The Debtor's financial difficulties are primarily the result of an unsuccessful real estate venture in northern Virginia.

Debtor purportedly owned 11% of the shares of Stafford Development Corporation ("Stafford Corp."). There were several other shareholders of Stafford Corp., among whom was Mr. Eddie Cantor ("Cantor") who held the largest percentage interest. Stafford Corp. was in the business of owning and developing a parcel of real property in Stafford County, Virginia (the "Virginia Property"). Stafford Corp. eventually sold the Virginia Property to Balbir Brar Associates for $1,650,000. The purchase price was partially payable through Balbir Brar's promissory notes to Stafford Corp. in the aggregate amount of $1,000,000 (collectively, the "Note"). The Note was secured by a purchase money deed of trust on the Virginia Property.

After the sale, Stafford Corp. borrowed $975,000 from Heritage Saving Bank, F.S.B. ("Heritage"). This loan was secured by the Note and the deed of trust on the Virginia Property. The loan proceeds were used to make distributions to the shareholders of Stafford Corp.

Heritage also obtained the guarantees of each shareholder and of each spouse who was not a shareholder. The guarantors executed an unconditional written guaranty in Henrico County, Virginia (the "Guaranty"). There were nine guarantors. The Debtor and his wife signed the Guaranty as husband and wife, as did Cantor and his wife, and two other married couples. The only guarantor to sign the Guaranty without a spouse was Warren D. Smith, who was divorced. The Guaranty reads, in part:

THIS UNCONDITIONAL GUARANTY is made this 7th day of May, 1989, by Eddie Cantor and Mary Lee Cantor, husband and wife; Robert Cantor and Selma Cantor, husband and wife; Warren D. Smith, divorced; Earl F. Leitess and Judith Leitess[,] husband and wife; and Robert A. Wetzler and Joyce T. Wetzler,

*husband and wife;* ("Guarantors") to HERITAGE SAVINGS BANK, FSB ...

In addition, the terms of the Guaranty state,

> The Guarantors, *jointly and severally,* unconditionally guarantee the payment of the Note, whether by acceleration or otherwise, together with all interest due thereon and all other obligations and liabilities, including reasonable attorney's fees, due pursuant to the Note, or which may be incurred in enforcing the payment of any amount due or the performance of any obligations owed by Maker [Stafford] or Guarantors pursuant to the Note, Security Agreement or any other document which secures the Note....

(Emphasis supplied.).

Heritage was later taken over by the Resolution Trust Corporation ("RTC"), and the RTC acquired all of Heritage's rights against the guarantors. Balbir Brar defaulted on the Note, and the RTC sought recovery of its deficiency from the guarantors. Facing substantial litigation with the RTC, Cantor employed Wyatt Durrette, an attorney with the law firm of Durrette, Irvin, Lemons & Bradshaw, ("Durrette") to negotiate a settlement. With Durrette's assistance, the guarantors reached an agreement with the RTC pursuant to which (1) Eddie Cantor paid the RTC $500,000 (the "RTC Payment"), and (2) Cantor and the other guarantors were granted a full release (the "Settlement Agreement"). Durrette has billed legal fees for negotiating the Settlement Agreement of more than $120,000, which Cantor has paid in part.

Cantor sought contribution from the other guarantors for both the RTC Payment and Durrette's fee. One of the original nine guarantors, Warren Smith, filed a bankruptcy case, and he is not an available source for contribution. Debtor and his wife refused to contribute. Consequently, Cantor sued Debtor and his wife in the United States District Court for the Eastern District of Virginia, demanding that each separately reimburse him for an individual *pro rata,* one eighth share of the RTC Payment. On August 30, 1994, before the District Court entered a judgment, Debtor and his spouse filed separate bankruptcy petitions. Debtor filed this case under Chapter 11, and his spouse filed under Chapter 7.

The questions for decision are raised by Debtor's objection to Cantor's claim for contribution and by Cantor's objection to Debtor's motion to classify Cantor's claim separately. Debtor's objection is that Cantor's claim is several against him and cannot reach property that Debtor holds by the entirety. Conversely, Cantor's objection to Debtor's separate classification of his claim is that Cantor's claim against Debtor and his wife is joint in nature and entitled to satisfaction from entireties property.

### *II. Choice of Law.*

 As a threshold matter, the court must determine what law applies. Maryland's choice of law rules will be utilized for this determination. *In re Chateaugay Corp.,* 170 B.R. 551, 555 (S.D.N.Y.1994) ("Because federal courts must defer to state law ... the applicable choice of law principles must determine which state's law applies."). To decide questions of validity and construction of contracts, Maryland adheres to the principle of *lex loci contractus,* under which the law of the jurisdiction where the contract was formed is applied, unless otherwise agreed by the parties. *Kronovet v. Lipchin,* 288 Md. 30, 43, 415 A.2d 1096, 1104 (1980); *National Glass, Inc. v. J.C. Penney Properties, Inc.,* 336 Md. 606, 610–11, 650 A.2d 246, 248–49 (1994); *American Motorists Insurance Company v. ARTRA Group, Inc.,* 338 Md. 560, 572, 659 A.2d 1295, 1301 (1995).

 The Guaranty does not have a choice of law provision. Therefore, the court under Maryland choice of law principles must look to the law of the state in which the guaranty contract was consummated. Since the contract was entered into in Henrico County, Virginia, Virginia law applies. Additionally, the settlement agreement between the guarantors and the RTC specifies that it is governed by federal law and, in absence of controlling federal law, of which there is none, by Virginia law. In any event, Maryland substantive law that is applicable to the questions for decision is substantially similar to that of Virginia. *Cf., In re Advance Insulation & Supply, Inc.,* 176 B.R. 390, 399

(Bankr.D.Md.1994), affirmed *sub nom., Rinn v. First Union Nat. Bank,* 176 B.R. 401 (D.Md.1995).

### III. Liability Under Guaranty.

■ Once the nature of the parties' obligations under the Guaranty is defined, well established principles of property law dictate the treatment of Cantor's equitable subrogation claim. If Debtor and his wife are jointly liable to Cantor on his subrogation claim, then Cantor is entitled to proceed against their entirety property. Conversely, if each has only several liability to Cantor, then Cantor cannot proceed against their entirety property.

#### A. Equitable Subrogation

■ When a surety satisfies the debt of another, the surety acquires all rights that the original creditor had against the debtor. "There are few doctrines better established than that a surety who pays the debt of another is entitled to all rights of the person he paid to enforce his right to be reimbursed." *Pearlman v. Reliance Ins. Co.,* 371 U.S. 132, 136–37, 83 S.Ct. 232, 235, 9 L.Ed.2d 190 (1962). See also *Federal Land Bank of Baltimore v. Joynes,* 179 Va. 394, 401, 18 S.E.2d 917, 920 (1942). Accord *Lyon v. Campbell,* 324 Md. 178, 182, 596 A.2d 1012, 1013–14 (1991); *Levenson v. Capital Mortgage,* 101 Md.App. 122, 132, 643 A.2d 505, 510 (1994). This principle is known as the doctrine of equitable subrogation. There is both legal and equitable subrogation. While one is grounded in law and the other in equity, both types arise through contract and place a party satisfying the debt of another in the shoes of the original creditor. *Rinn v. First Union National Bank of Maryland,* 176 B.R. 401, 407–408 (D.Md.1995), affirming *sub nom., In re Advance Insulation & Supply, Inc.,* 176 B.R. 390 (Bankr.D.Md.1994) and citing *Security Ins. Co. v. Mangan,* 250 Md. 241, 242 A.2d 482, 485 (1968). While the terms surety and guarantor are not identical, equitable subrogation applies to both. *Davis v. Wells, Fargo & Co.,* 104 U.S. 159, 169, 26 L.Ed. 686 (1881); *Colonial Am. Nat. Bank v. Kosnoski,* 617 F.2d 1025, 1029–30 (4th Cir. 1980) (Murnaghan, J., dissenting opinion);

*Weitz v. Marram,* 34 Md.App. 115, 121, 366 A.2d 86, 89 (1976) (citing *Hooper v. Hooper,* 81 Md. 155, 31 A. 508 (1895)).

■ Equitable subrogation is subject to limitation in cases where the relationship among the parties is one of co-guarantors. *Gordon v. Rixey's Adm'r and al.,* 86 Va. 853, 857, 11 S.E. 562, 564 (1890); *Atalla v. Abdul-Baki,* 976 F.2d 189, 192 (4th Cir.1992). In these situations, liability is limited to the contributive share of each co-guarantor. This principle is summarized and set forth in the *Restatement of Security,* § 141, entitled Subrogation.

> Where the duty of the principal to the creditor is fully satisfied, the surety to the extent that he has contributed to this satisfaction is subrogated
>
> \* \* \* \* \* \*
>
> (d) to the rights of the creditor against cosureties and to the creditor's interest in security held by them, *but in such case the cosurety's personal liability is limited to the amount which will satisfy his duty to contribute his share of the principal's default.*

*Restatement of Security,* § 141 (1941 & Supp.1995) (Emphasis added). The comments to § 141 elaborate as follows:

> *a. Subrogation.* Subrogation is a term describing the equitable remedy by which, where the property of one person is used to discharge a duty of another or a lien upon the property of another, under such circumstances that the other will be unjustly enriched by the retention of the benefit thus conferred, the former is placed in the position of the obligee or lienholder. . . .
>
> *Comment on Clause (d):*
>
> i. The surety who satisfies the principal's duty may be subrogated to the creditor's rights not only against the principal but to the creditor's right against cosureties and to the creditor's interest in security held by cosureties. In the enforcement of the creditor's rights the surety's recovery

is limited to the cosurety's contributive share....

*Id.*

■ Closely akin to equitable subrogation is the doctrine of contribution. See *Restatement of Security* § 149. Contribution is also rooted in equity, but it springs from the relationship among parties when one surety "discharges more than his proportionate share ..." of a mutual obligation, and not from a contract. *Van Winckel v. Carter,* 198 Va. 550, 555, 95 S.E.2d 148, 152 (1956). See *Lyon v. Campbell,* 324 Md. 178, 181–184, 596 A.2d 1012, 1013–015 (1991). Cantor rests his case on equitable subrogation, not contribution. Therefore, the court will address the issue of equitable subrogation.

■ Under equitable subrogation, Cantor is subrogated to all the rights the RTC acquired from Heritage. However, because of the equitable limitation on the amount Cantor can seek from each of his co-guarantors, an issue arises as to whether he can proceed against the Wetzlers jointly.

In *Weitz v. Marram,* seven parties guaranteed an obligation due under a note in the amount of $60,000. Weitz, one of the guarantors, paid the note in full, obtained an assignment of the guaranty, and sought the full amount due by the guarantors under the guaranty. Relying upon the fact that the guarantors were jointly and severally liable under the original guaranty, Weitz argued that he " '... could proceed against any one or more of the guarantors for the entire amount due.' " *Weitz,* 34 Md.App. at 120, 366 A.2d at 89.

The Court of Special Appeals of Maryland rejected Weitz' contention and concluded that a party discharging the debt of co-guarantors may recover no more from each individual co-guarantor than his or her *pro rata* share of the obligation. *Id.* at 121, 366 A.2d at 89. The court held that each co-guarantor was liable for only one seventh of the total sum of $60,000, i.e. $8,571.43. *Id.* at 121–22, 366 A.2d at 89–90. The *Weitz* court's ruling, however, merely limited the amount of liability of each co-guarantor. It was silent as to whether Weitz lost the right to proceed jointly against married co-guaran-

tors. It was also silent whether Weitz could recover from married guarantor's entirety property.

Neither party cites a case that considers the impact on tenancy by the entirety property of the *pro rata* share limitation on equitable subrogation recoveries. Most courts that have limited equitable subrogation have done so in the same manner as the court in *Weitz v. Marram.* They simply limit liability, but they do not address the issue of joint liability of a husband and wife that have each executed a guaranty.

One case that did define the liability of husband and wife guarantors on a proportionate contribution claim is *Mansfield v. McReary,* 263 Or. 41, 497 P.2d 654 (1972), *rehearing denied,* 263 Or. 41, 501 P.2d 69 (1972). In *Mansfield* a guarantor satisfied a debt to a creditor in full. *Id.* 497 P.2d at 655. The guarantor then sought reimbursement from her co-guarantors. Two of the co-guarantors, a husband and wife, had signed a guaranty agreement for $60,000. The plaintiff sued the couple claiming $60,000 from each of them. The plaintiff's argument was that "because the bank could have ultimately collected the full sum of the ... $60,000 guaranty from *either* of them, ... their proportionate responsibility for contribution should be as if *each* owed that amount, or, both owed a total of $120,000." *Id.* at 656 (Emphasis in original.). The trial court, however, awarded separate verdicts against the husband and the wife for $30,000. *Id.* at 656.

The Supreme Court of Oregon rejected the plaintiff's contention that she was entitled to $120,000 from the two defendants, because the spouses "should not be required to pay a greater proportion ... than the proportion of their combined guaranty of $60,000 bore to the total of all guaranties." *Id.* Next, the court upheld entry of the separate verdicts against each defendant for one half of the $60,000 liability. The court held that each co-guarantor was severally liable for his or her contribution to the original guaranty. It reasoned:

> If the rule were otherwise, a co-obligor, who alone was compelled to satisfy a judgment representing the whole proportionate

part of the debt owed by his group, would have to proceed anew against the remaining members of his group for contribution, thus bringing on a multiplicity of cases.

*Id.* at 656.

The *Mansfield* opinion, and the cases on which it relied, focus on limiting repetitive litigation among co-obligors. The premise of the opinion is that each guarantor had signed separately. The co-guarantor who had paid the debt sought to recover contribution against some guarantors jointly. The court treated the spouses as a group of less than all guarantors that had guaranteed a portion of an obligation, and it applied the principles of contribution that are applicable to members of a group. See *Restatement of Security*, § 154(1), Comment *g*. *Id.* at 656. Mansfield did not address the situation where husband and wife guarantors signed the guaranty as husband and wife jointly, and where the creditor's right was to reach tenancy by the entirety property. In the instant case, however, the Debtor and his spouse expressly entered into the guaranty agreement as "husband and wife", and they "jointly and severally" unconditionally guaranteed payment of the Note, as did each other married couple.

The articulated concern addressed by the court in *Mansfield* was to foster judicial economy by eliminating the potential for additional litigation among group members for shares of the group's liability. *Id.* at 656. The court considered, as "equally applicable" to determining the liability of married co-obligors, cases where a co-obligor who paid the debt unsuccessfully attempted to collect the entire contribution from less than all of the group, although the court acknowledged "there might not be much likelihood of a separate proceeding for contribution between [the married co-obligors]." *Id.*

 This court concludes that the *Mansfield* articulation is not applicable to Cantor's equitable subrogation claim in this case, and a contrary result is indicated. First, in Virginia, as in Maryland, the doctrines of tenancies by the entirety are strong and enduring.

Second, the equitable subrogation claim is premised on the guaranty agreement, and it is not based merely on the relationship among co-guarantors among whom only the equitable doctrine of contribution would define the respective liabilities. While equitable subrogation "does not spring from contract ... it may be confirmed or qualified by contract." *Restatement of Security*, § 141, Comment a. Therefore, to define the liability of each co-obligor on an equitable subrogation claim, the court should examine how the liability of each co-guarantor is defined in the guaranty agreement, *e.g.*, whether it is several, limited, shared jointly with less than all co-obligors, or simply joint with all other obligors. Here, the Guaranty defines the obligation of the guarantors as joint and several, to which liability among the guarantors the limitation on equitable subrogation in Section 141(d) of the *Restatement of Security* applies. However, the four guarantor entities in this case are defined as husband and wife. One significance of joint contractual liability by a husband and wife is that property they hold as tenants by the entirety may be reached to satisfy their joint debt. See *Sumy v. Schlossberg*, 777 F.2d 921 (4th Cir.1985). Cf., *In re Ballard*, 65 F.3d 367, 370–371 (4th Cir.1995).

Virginia acknowledges the doctrine of tenancy by the entirety in its traditional form. *Sundin v. Klein*, 221 Va. 232, 238, 269 S.E.2d 787, 790 (1980), *cert. denied*, 452 U.S. 911, 101 S.Ct. 3043, 69 L.Ed.2d 414 (1981) ("The tenancy can be created in Virginia with all its common law incidents."). Originating from the common-law theory that a husband and wife are one person, tenants by the entirety can only exist between persons who are legally married. *Jones v. Conwell*, 227 Va. 176, 181, 314 S.E.2d 61, 64 (1984); *Gant v. Gant*, 237 Va. 588, 591, 379 S.E.2d 331, 332 (1989). For contracts entered into by a husband and a wife, there is a presumption that they do so jointly as entireties and not as individuals. *Sundin*, 221 Va. at 238, 269 S.E.2d at 790. The purpose behind tenancy by the entirety property is to protect one spouse from unilateral acts of the other spouse to alienate jointly held property. Accordingly, a tenancy by the entirety cannot be severed or divided into two interests by

the act of one spouse, although it may be destroyed or terminated by the joint act of both husband and wife. *Vasilion v. Vasilion,* 192 Va. 735, 739–40, 66 S.E.2d 599, 601–02 (1951). An individual debtor may therefore exempt entirety property from claims of individual creditors. *Id.* Conversely, if both spouses acting together burden tenancy by the entirety property, the debtors may not exempt it under Virginia law as to joint creditors. *Hausman v. Hausman,* 233 Va. 1, 3, 353 S.E.2d 710, 711 (1987).

 This is not a case where one spouse unilaterally alienated marital property. The Debtor and his wife each signed the Guaranty, which explicitly described them as "husband and wife." Moreover, as to Heritage they agreed to joint and several liability. They could not have exempted their property from the reaches of Heritage, or the RTC, under the Guaranty. Cantor argues that his rights against Debtor should be exactly the same rights that the RTC had under the original Guaranty. Since the RTC could have proceeded against the Debtor's entirety property, Cantor contends he should likewise be able to proceed against the property.

Although Cantor may be entitled to all the rights of the RTC as a matter of equitable subrogation, Debtor argues that the limitation on recovery stated in *Restatement of Security,* § 141(d) limits Cantor to several claims against Debtor and his wife. The issue would then become whether the several claims can be treated as joint. See *State v. Friedman,* 283 Md. 701, 708, 393 A.2d 1356, 1359 (1978) ("[T]here is no requirement in this contest that the judgments be perfected against a husband and wife at the same instant …"); *United States of America v. Chapuisat,* 8 D. & C. 4th 467 (Penn.1990) (Execution must be denied against entireties property even where a creditor obtains separate judgments but could have obtained a joint judgment); *Blusiewicz v. Rosenfield,* 33 D. & C.2d 470 (Penn.1964) (where a judgment obtained against a husband and wife individually out of the same transaction was insufficient to reach entireties property).

The court need not entangle itself in the complicated web of such an issue. The Debtor and his wife executed the Guaranty as a married couple. The Guaranty reads: "THIS Guaranty is made this 7th day of May 1989, by … Robert A. Wetzler and Joyce T. Wetzler, husband and wife." Indeed, every married couple that signed the Guaranty entered into it as husband and wife. The court accepts the Guaranty at face value and finds that the Wetzlers entered into the Guaranty as a married couple. Accordingly, the contributive share limitation does not restrict Cantor to claims for several liability against Debtor and his wife separately.

## B. Effect of Two Separate Bankruptcy Cases

Debtor and his wife cannot foil Cantor's joint claim against them by filing separate bankruptcy cases. The United States Court of Appeals for the Fourth Circuit frustrated such strategic maneuvering in *Sumy v. Schlossberg,* 777 F.2d 921 (4th Cir.1985) (applying Maryland law). See also *Chippenham Hospital, Inc. v. Bondurant,* 716 F.2d 1057, 1058 (4th Cir.1983) (under Virginia law, court allowed bankruptcy stay to be lifted, so that a state court could render a joint judgment against a married couple's entirety property). In *Sumy,* the debtor attempted to exempt his entirety property from joint creditors by filing bankruptcy separately from his wife. Holding that the joint creditors could proceed against the entirety property, the court stated: "If we were to adopt Sumy's interpretation of the entireties exemption, and if Sumy were to make full use of the Code's broad powers and protections for debtors, he might be able to commit the very 'legal fraud' that we have repeatedly condemned." *Id.* at 929. The *Sumy* court also based its decision on the fundamental principle that a bankruptcy proceeding should not alter property rights under state law. *Id.* at 928–929. See also *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).

 Following *Sumy's* teachings, the Debtor and his wife cannot utilize bankruptcy to deprive a creditor of his state law property rights. A joint creditor maintains the same property rights in bankruptcy as outside. *Butner,* 440 U.S. at 55, 99 S.Ct. at 918. See also 11 U.S.C. § 522(b)(2)(B).

Since Cantor has a claim against the Debtor and his wife jointly outside bankruptcy, he also has a joint claim against them in bankruptcy.

### C. Amount of Contribution

 Having found that the entirety property is attachable, the court must now determine the Wetzlers' contributive share under the Guaranty. For purposes of contribution, the court need only concern itself with eight of the nine individuals who signed the Guaranty. Warren D. Smith is not considered because the parties concede he is insolvent, he filed bankruptcy prior to the settlement, and he did not take part in the Settlement Agreement. A guarantor who is insolvent is not considered for the purposes of an equitable claim for contribution. *Cooper v. Greenberg,* 191 Va. 495, 502, 61 S.E.2d 875, 879 (1950). Accord, *Restatement of Security,* § 154(2). See also *Jackson v. Cupples,* 239 Md. 637, 640, 212 A.2d 273, 275 (1965). Since the Wetzlers entered into the Guaranty as "husband and wife," they are considered one party for purposes of equitable subrogation claims, as are the other married guarantors since every married guarantor signed the guaranty as "husband and wife." Consequently, there are only four contributive shares. The Wetzlers are liable jointly and severally to Cantor for one quarter of the RTC Payment, absent a contractual or equitable limitation. See *Restatement of Security,* at § 154, Comment f.

 When there is joint liability, each and every co-obligor is also severally liable for the entire joint debt. *Houston v. Bain,* 170 Va. 378, 391–92, 196 S.E. 657, 662–63 (1938); *Link v. Weizenbaum,* 229 Va. 201, 204, 326 S.E.2d 667, 669 (1985). Accord, *Westheimer v. Craig,* 76 Md. 399, 25 A. 419 (1892); *Queen City Enters., Inc. v. Independent Theatres, Inc.,* 230 Md. 387, 393–94, 187 A.2d 459 (1963); Md.Code Ann., Cts. & Jud. Pro. § 11–102 (1995 Repl.Vol.). A judgment against one joint obligor does not extinguish the liability of the others. *Id.; Equity Investors, Ltd. v. West,* 245 Va. 87, 90–91, 425 S.E.2d 803, 805–06 (1993). However, there can be only one satisfaction of a joint debt. *Norris v. Barbour,* 188 Va. 723, 743, 51 S.E.2d 334, 342 (1949); *Westheimer v. Craig,* 76 Md. at 407, 25 A. 419; *Queen City v. Independent Theatres,* 230 Md. at 394, 187 A.2d 459. These principles constitute a third reason for reaching a result contrary to *Mansfield* where the court upheld several liability for spouses of one half each.

The Debtor argues that the court should consider the benefit each party received from the guaranteed loan to Stafford Corp. Since the Wetzlers through Debtor enjoyed an eleven percent interest in Stafford Corp., Debtor contends they should be liable for only eleven percent of the amount paid by Cantor to satisfy the Guaranty. As urged by Debtor, co-obligors who share unequally in the benefit flowing from a guaranty should be liable in differing amounts. In support of his position, Debtor cites *Maresh v. Jennings,* 38 S.W.2d 406 (Tex.1931), *Tucker v. Nicholson,* 12 Cal.2d 427, 84 P.2d 1045 (1938), and *Dittberner v. Bell,* 558 S.W.2d 527 (Ct. of App.Tex.1977).

Debtor's argument fails. To the extent the cited cases might be considered under Virginia or Maryland law, they apply only where co-obligors share unequally in a direct benefit arising from the Guaranty, and not where, as here, the benefit is indirect through stock ownership in the principal obligor. *Miller v. Miles,* 400 S.W.2d 4 (Ct. of App.Tex.1966). Here a direct benefit may arguably have arisen from Stafford Corp.'s distribution of the loan proceeds to shareholders, but there is no evidence or stipulation from which to determine if there was a disproportionate benefit.

 The general rule, however, is that *pro rata* distribution is determined by the number of guarantors, not by the interest of each guarantor. The equitable objective is to equalize the loss among those who are equally bound. See *Restatement of Security,* at § 154, Comment b. This is the method of calculation used by both Virginia and Maryland. *Houston v. Bain,* 170 Va. 378, 389–90, 196 S.E. 657, 662 (1938); *Lyon v. Campbell,* 324 Md. 178, 182–84, 596 A.2d 1012, 1013–14 (1991); *Jackson v. Cupples,* 239 Md. 637, 212 A.2d 273, 274–75 (1965); *Weitz v. Marram,* 34 Md.App. at 121, 366 A.2d at 89–90. *Cf., Cooper v. Greenberg,* 191 Va. 495, 61 S.E.2d

875 (1950) (suit for contribution from accommodation makers at law, not in equity). The equitable factors that might modify the general *pro rata* rule for contribution are insolvency of a guarantor (such as Mr. Smith in this case), a guarantor's absence from the jurisdiction, or a difference in status among guarantors. *E.g., Weitz v. Marram*, 34 Md. App., at 121, fn. 6, 366 A.2d at 90. Although it is not authority because it is an unpublished opinion, the only indication from the U.S. Court of Appeals for the Fourth Circuit rejects Debtor's argument. *Goosman v. Harris*, 966 F.2d 1442, 1992 WL 144789, *1 (4th Cir.1992) (applying Virginia law). Fourth Circuit I.O.P. 36.6.

■ Because the Wetzlers were equally liable on the Guaranty with their co-guarantors to Heritage/RTC, they were equally benefitted by Cantor's payment to obtain release of the Guaranty. Therefore, equity requires that they contribute an equal share. Debtor's argument incorrectly focuses on the relative potential for benefit when the guarantee was given, rather than on the actual, relative benefit received when the guarantee was released.

For these reasons, Cantor's cognizable claim is one quarter of the RTC Payment of $500,000, namely, $125,000, from the Debtor and his wife jointly. Since he holds a joint claim, Cantor may seek satisfaction of his claim from the Wetzlers' tenancy by the entirety property up to this amount.

### IV. Attorney Fees.

■ Cantor further seeks contribution from the Wetzlers for Durrette's bills for legal services. The Guaranty contains a provision covering legal fees.

> The Guarantors, jointly and severally, unconditionally guarantee the payment of the Note, whether by acceleration or otherwise, together with all interest due thereon and all other obligations and liabilities, *including reasonable attorney's fees, due pursuant to the Note, or which may be incurred in enforcing the payment of any amount due or the performance of any obligations owed by Maker or Guarantors pursuant to the Note, Security Agreement*

or any other document which secures the Note. . . .

(Emphasis added.)

The legal costs incurred by Cantor in negotiating the Settlement Agreement were not for enforcing the payment of any amount due under the Note or performance of the Guaranty. The language of the Guaranty, therefore, does not cover Durrette's counsel fees, and the doctrine of equitable subrogation is not applicable. Accord *Weitz v. Marram*, 34 Md.App. at 122–23, 366 A.2d at 90, where the denial of contribution for attorneys' fees was affirmed after the court found a comparable clause inapplicable to counsel fees in an action between co-guarantors.

■ The Wetzlers benefitted from Durrette's legal services, obtained by Cantor, in negotiating the Settlement Agreement. The Wetzlers accepted the benefits of the full release that was negotiated when they signed the Settlement Agreement. However, to trigger equitable contribution there must be a mutual obligation or common burden, as to which one party has paid a disproportionate share. *E.g., Lyon v. Campbell*, 324 Md. at 182, 596 A.2d at 1013; *Houston v. Bain*, 170 Va. at 389–390, 196 S.E. at 662. See also *Restatement of Security*, at § 154, Comment b. There was none here.

■ Under Virginia law, "formality is not an essential element of the employment of an attorney." *Nicholson v. Shockey*, 192 Va. 270, 276–77, 64 S.E.2d 813, 816 (1951). Hence, no written contract is needed. An attorney-client relationship, moreover, may be created through either express or implied consent. *Id.; In re Chantilly Const. Corp.*, 39 B.R. 466 (Bankr.E.D.Va.1984).

■ Neither party, however, has presented credible evidence of the existence or absence of either a written or oral agreement among the co-guarantors to retain or pay Durrette for his services. This may be because counsel agreed to defer Debtor's objections to Durrette's claim and Debtor's motion to estimate Durrette's claim, although both pleadings appear directed more toward amount than to liability. Further, there is no evidence as to the amount paid by Cantor to Durrette that would be a predicate to

calculating, if warranted, a contribution amount. Presumably, if a common burden or mutual obligation is established for Durrette's fees, whatever liability Debtor might have, being based solely on the doctrine of equitable contribution among co-obligors, would be several, and not joint with his wife. See *Mansfield v. McReary, Lyon v. Campbell, Houston v. Bain.*

## CONCLUSION

For the reasons discussed, Cantor's claim for contribution from the Debtor will be allowed in the amount of $125,000, as a joint claim, and Cantor's objection to Debtor's separate classification of this claim as several only will be sustained. All other issues are deferred. A separate order will be entered to effect these conclusions.