## SAMUEL W. HIXON, III, TRUSTEE, ET AL.

### V.

## CREDIT ALLIANCE CORPORATION, ET AL.

Record No. 860364

June 10, 1988

Present: All the Justices

*Channing J. Martin (Williams, Mullen, Christian & Dobbins*, on briefs), for appellants.

*Stephen E. Leach (Zuckerman, Spaeder, Goldstein, Taylor & Kolker*, on brief), for appellees.

CARRICO, C.J., delivered the opinion of the Court.

This case involves an application of the Uniform Commercial Code in the context of a dispute between the holders of competing security interests in a piece of road construction machinery or equipment known as a "flusher." The litigation began when Virginia Tractor Company, Inc., through its trustees under a liquidating trust created by its shareholders (Virginia Tractor), filed a motion for judgment seeking damages against Credit Alliance Corporation, C-A Leasing Service Corporation, and Philip D. Cooper, regional vice president of Credit Alliance Corporation (collectively, Credit Alliance).

The motion for judgment alleged that Credit Alliance had wrongfully converted the flusher by selling it to satisfy its claim in violation of Virginia Tractor's rights. The trial court granted summary judgment in favor of Credit Alliance. Virginia Tractor has appealed.

The record shows that the flusher was purchased by Rodgers Brothers Construction Company, Inc., of Fairfax, Virginia, on April 29, 1982. It was installed on Rodgers' truck in Oregon, Illinois, and delivered to Rodgers at that location on May 28, 1982.

On the latter date, Rodgers executed a promissory note payable to Credit Alliance for $1,404,000. Rodgers also executed a security agreement giving Credit Alliance a security interest in all "the goods, chattels and property described in the annexed Schedule A and all other . . . machinery [and] equipment . . . now or hereafter belonging to [Rodgers]." On the attached schedule, 86 items of machinery and equipment were listed. The flusher in question, then still in Illinois or en route to Virginia, was not on the list. Credit Alliance perfected its security interest by filing financing statements with the State Corporation Commission on June 3, 1982, and the Clerk of the Circuit Court of Fairfax County on June 7, 1982.

On December 1, 1982, Rodgers executed a promissory note payable to Virginia Tractor for $44,000, together with a security agreement specifically naming the flusher as one of the items of equipment covered by the agreement. Virginia Tractor perfected its security interest by filing financing statements with the State Corporation Commission on December 7, 1982, and the Clerk of the Circuit Court of Fairfax County on December 9, 1982.

On October 5, 1983, Rodgers filed a petition for relief under Chapter 11 of the United States Bankruptcy Code. On December 5, 1983, the bankruptcy court permitted Virginia Tractor to pursue "whatever nonbankruptcy rights and remedies it had with respect to the flusher."

Virginia Tractor did not take possession of the flusher, but permitted it to remain on Rodgers' premises. In April 1984, Credit Alliance gave notice of its intent to sell the flusher on April 27, 1984. On that day, despite Virginia Tractor's protest, Credit Alliance took possession of the flusher and sold it for approximately $34,750. The filing of this action soon followed.

Virginia Tractor contends that the sale of the flusher was invalid and constituted an unlawful conversion because Credit Alliance had not perfected its security interest according to law. Virginia Tractor emphasizes the language of Paragraph 8 of the financing statement, which defines "the collateral" as:

"All machinery, inventory, equipment and goods as described in attached entire Agreement &/or in any Schedule prepared in connection therewith. This UCC form together with the attached Security Agreement &/or Schedule are being submitted for filing herewith as a financing statement."

Virginia Tractor points out that Code § 8.9-402 allows a creditor's financing statement to describe collateral by item or by type.[1] Virginia Tractor submits that had Credit Alliance wanted to claim a security interest in all equipment owned or later acquired by Rodgers, it could have done so simply by describing the collateral by type, saying in the financing statement that the collateral consisted of all "machinery, inventory, equipment, and goods now or hereafter belonging to Rodgers."

Virginia Tractor then asserts that when Credit Alliance added the words "as described" after the listing of "machinery, inventory, equipment and goods," it chose to describe the collateral by item rather than type and thus limited the collateral to what was listed on the attached Schedule A. Because the flusher was not listed on the schedule, Virginia Tractor concludes, Credit Alliance did not have "a perfected security interest in it."

We disagree with Virginia Tractor. What its argument amounts to is that a creditor may describe collateral by type or by name, but not both. As indicated in note 2, however, Code § 8.9-402, which sets forth the "[f]ormal requisites of financing statements," provides in subsection (1) that "[a] financing statement is sufficient if it . . . contains a statement indicating the types, or describing the items, of collateral."[2] We see nothing in this statutory language which would either mandate or justify a holding that, if a creditor describes part of the collateral by item, he cannot describe another part by type.

Virginia Tractor cautions, however, that a "reasonably diligent title searcher" would look only to Schedule A "to determine what specific 'items' of collateral were described." The searcher would find a list of 86 items of equipment, Virginia Tractor says, specifi-

---

[1] In pertinent part, Code § 8.9-402 reads:

(1) A financing statement is sufficient if it . . . contains a statement indicating the types, or describing the items, of collateral.

[2] In addition, Code § 8.9-110 provides that for the purposes of Title 8.9, "any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described."

cally identified by name, make, and serial number, but would find the flusher nowhere on the list. The title searcher would not look to the security agreement itself, Virginia Tractor maintains, because it is "a fine print, boilerplate, *printed* form" on which no one "would reasonably expect to find an itemization of the particular collateral claimed."

█ We do not think a reasonably diligent title searcher would limit his examination to Schedule A. Instead, we think he would read Paragraph 8 of the financing statement and realize that the security agreement is made part of the financing statement and that the two must be read together to determine what is included in collateral.

█ When the title searcher turns to the security agreement, this is the very first language he would encounter in the body of the instrument:

> 1. To secure the payment . . . and the performance . . . of any and all Mortgage Obligations . . ., Mortgagor hereby grants . . . to Mortgagee, all and singular, the goods, chattels and property described in the annexed Schedule A *and all other . . . machinery [and] equipment . . . now or hereafter belonging to Mortgagor . . . .*

(Emphasis added.) A financing statement which describes collateral only as " 'machinery and equipment' " provides "a sufficient description and [is] a valid financing statement." *In re Tebbs Const. Co., Inc.*, 39 Bankr. 742, 746 (Bankr. E.D. Va. 1984).

█ Virginia Tractor argues, however, that the "multi-document financing statement" employed in this case "is 'seriously misleading' " and hence in violation of Code § 8.9-402(8). This subsection reads:

> A financing statement substantially complying with the requirements of [Code § 8.9-402] is effective even though it contains minor errors which are not seriously misleading.

This provision, however, is intended to demonstrate "clearly that the purpose of [Code § 8.9-402] is to create a system of notice filing which contemplates further inquiry by a party in order to determine whether a particular asset is covered by a security agreement." *Tebbs*, 39 Bankr. at 747. *See also In re Varney Wood Products, Inc.*, 458 F.2d 435, 437 (4th Cir. 1972).

This view is consistent with the Official Comment to Code § 8.9-402. Paragraph 2 of the Official Comment states:

This section adopts the system of "notice filing" which proved successful under the Uniform Trust Receipts Act. What is required . . . is . . . only a simple notice which may be filed before the security interest attaches or thereafter. The notice itself indicates merely that the secured party who has filed may have a security interest in the collateral described. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs.

■ In awarding summary judgment in this case, the trial court held that because the security interest of Credit Alliance was validly perfected and was prior in time to the security interest of Virginia Tractor, the sale of the flusher by Credit Alliance did not amount to a conversion or otherwise violate Virginia Tractor's rights. These holdings are plainly correct, and, accordingly, we will affirm them as well as the final judgment of the trial court.

*Affirmed.*