**In re KITCHIN EQUIPMENT COMPANY OF VIRGINIA, INCORPORATED, Debtor.**

**CRESTAR BANK, Plaintiff–Appellee,**

**v.**

**George W. NEAL, Trustee, Defendant–Appellant,**

**and**

**Kitchin Equipment Company of Virginia, Incorporated, Defendant.**

**No. 91–2060.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 4, 1991.

Decided March 30, 1992.

---

Lawrence Hoyt Glanzer, Pender & Coward, P.C., Virginia Beach, Va., argued, for defendant-appellant.

James L. Miller, Williams, Kelly & Greer, P.C., Norfolk, Va., argued, for plaintiff-appellee.

Before PHILLIPS and NIEMEYER, Circuit Judges, and BUTZNER, Senior Circuit Judge.

## OPINION

BUTZNER, Senior Circuit Judge:

George W. Neal, trustee in bankruptcy of the debtor, Kitchin Equipment Company of Virginia, Inc., appeals an order granting relief to Crestar Bank from the automatic stay of collection provided by 11 U.S.C. § 362. The district court affirmed the bankruptcy court's order granting relief. This appeal presents the sole issue whether, after Crestar erroneously filed a termination statement, it still retained a perfected security interest in Kitchin's assets. We reverse the judgment and remand to the district court with instructions to reinstate the automatic stay.

I

The relevant facts have been stipulated by the parties. In 1984, Kitchin entered into a financing arrangement which secured its debt to Crestar by a lien against Kitchin's furniture, fixtures, equipment, inventory, accounts receivable, and personal property. Crestar perfected its security interest in the collateral by properly filing a financing statement in September of that year. In July 1989, Crestar filed a valid continuation statement, extending its security interest in the collateral. In March 1990, Kitchin obtained a loan of $1,232,526.26 from Crestar, giving in exchange a negotiable promissory note securing the debt by reference to the previously filed security agreement. In May of 1990, Kitchin sought protection from its creditors under Chapter 11 of the Bankruptcy Code. In June, Crestar filed a statement that was intended to release from the security agreement only two specific items of heavy equipment.

The statement, entered on a printed form prepared by Crestar, was headed "Financing Statement." After the name of the debtor appeared a section headed "Check the box indicating the type of statement. Check only one box." The choices available were: ORIGINAL FINANCING STATEMENT, CONTINUATION—ORIGINAL STILL EFFECTIVE, AMENDMENT, ASSIGNMENT, PARTIAL RELEASE OF COLLATERAL, and TERMINATION. By error, Crestar checked the TERMINATION box. In a space labeled "Description of collateral covered by original financing statement" the bank typed: "The following

two (2) specific pieces of equipment are to be released under Crestar's blanket security lien: 1) Crane ID # LC700 SN C 19006 [and] 2) Crane ID # LRT 220 SN 79055." The State Corporation Commission and the Clerk of the Circuit Court of Chesapeake recorded the statement; the latter stamped "TERMINATED" across it twice.

In October 1990, Kitchin moved to convert its proceedings to a Chapter 7 bankruptcy. Shortly thereafter, Crestar moved for relief from the automatic stay. In its amended answer opposing the modification of the automatic stay, Kitchin denied that Crestar's claim was secured. The bankruptcy court allowed the trustee to rely on Kitchin's response.

The bankruptcy court, without discussing its reasons, held that Crestar terminated its perfected security interest only with respect to the two items of equipment listed on the termination statement. On appeal, the district court, affirming the bankruptcy court, held that "no potential creditor could have possibly been misled when confronted with the description of the designated collateral to be released by Crestar." The district court relied on Va.Code § 8.9–402, official comment para. 2, and it distinguished the cases on which the trustee relied.

## II

The Bankruptcy Code provides that filing a petition under Chapter 7 or Chapter 11 of the Code operates as an automatic stay against any attempt to collect or enforce any lien, judgment, or claim against the estate. 11 U.S.C. § 362(a). A party with an "interest in property" held by the debtor may ask the court for relief from the stay upon a showing of "lack of adequate protection" of that interest or that the debtor lacks equity in the property. 11 U.S.C. § 362(d)(1). A trustee or a debtor in possession, without regard to any knowledge, is empowered to avoid any transfer of property of the debtor or any obligation of the debtor that is voidable by a hypothetical lien creditor. 11 U.S.C. §§ 544(a)(1) and 1107(a). *Rock Hill Nat'l Bank v. York Chem. Indus., Inc., (In re*

*York Chem. Indus., Inc.*), 30 B.R. 583, 585 (Bankr.D.S.C.1983). The trustee's powers "serve essentially to marshal all of the debtor's assets, including some that the debtor itself could not recover, in order to enhance the resources available to the pool of creditors." *Vineyard v. McKenzie (In re Quality Holstein Leasing)*, 752 F.2d 1009, 1014 (5th Cir.1985).

While federal law confers on the trustee the power to avoid some transfers and obligations of the debtor, state law controls the exercise of this power. *Havee v. Belk*, 775 F.2d 1209, 1218 (4th Cir.1985). In Virginia, secured transactions are governed by Va.Code Ann. Title 8.9, which enacts the Uniform Commercial Code. A security interest in personal property and fixtures must be perfected by filing of a financing statement. Va.Code Ann. § 8.9–302(1) (Michie 1991). An effective financing statement may be amended by a second filing signed by both parties. The term "financing statement" in the Code refers both to the original and to any amendments. Va.Code Ann. § 8.9–402(4) (Michie 1991). A financing statement "substantially complying" with statutory requirements "is effective even though it contains minor errors which are not seriously misleading." Va.Code Ann. § 8.9–402(8) (Michie 1991).

Another section, § 8.9–404, governs a "termination statement," which is to be filed by the secured creditor after the debt is satisfied and the debtor makes a written demand. § 8.9–404(1) (Michie 1991). Unlike § 8.9–402, § 8.9–404 contains no provision excusing minor errors that are not seriously misleading. Termination of a security interest does not discharge the debtor's obligation to pay the creditor. Termination, however, releases the secured creditor's lien against the debtor's property.

## III

Crestar advances several reasons why it retained its security interest in most of Kitchin's assets. As its first ground, it argues that the statement it filed complied with Va.Code Ann. § 8.9–406, which per-

mits a secured creditor to release a part of the collateral by filing a "statement of release." Crestar contends that the release it filed cannot be considered a termination statement within the meaning of § 8.9–404 because that section requires that such a statement be filed after there is no outstanding secured obligation and upon written demand of the debtor. These prerequisites to a valid termination statement, Crestar points out, are absent.

Neither the bankruptcy court nor the district court adopted Crestar's argument, and we are not persuaded. Crestar designed the form it filed. The form provided a space for inserting the file number of the original financing statement. Crestar complied. The form then directs: "Check the box indicating the kind of statement. Check only one box." The form contained a box for "PARTIAL RELEASE OF COLLATERAL." Crestar did not check this box.

Crestar checked the box marked TERMINATION, indicating in accordance with the language of the form that this was a termination statement, not a partial release. Contrary to Crestar's argument, a filing specifically described as a termination statement, for which provision is made in § 8.9–404, is not the kind of partial release contemplated by § 8.9–406.

█ Crestar cannot prevail by its argument that its filing could not be a termination statement because it had not been preceded by payment of the debt and a demand by the debtor as specified in § 8.9–404(1). These provisions are for the benefit of the debtor. When the conditions for their application are met, the creditor must file a termination statement. Failure to do so imposes liability for damages under § 8.9–404(1). But nothing in the statute prevents the creditor from filing a termination statement on its own volition without awaiting demand. Under Crestar's theory a potential creditor could not rely upon a termination statement without inquiring whether the debtor had paid his obligation and made demand. Acceptance of Crestar's reasoning would defeat the utility of § 8.9–404.

█ There is no merit in Crestar's argument that its filing is ineffective as a termination statement because it does not recite that the secured party "no longer claims a security interest under the financing statement." This language, Crestar contends, is required by § 8.9–404. Crestar has misread the statute. There is no requirement that a termination statement must contain the text Crestar quotes. The only requirement is that the termination statement be "to the effect" that the secured party no longer claims a security interest. A check in the TERMINATION box on Crestar's form in conjunction with the printed language of the form discloses that the filing is a termination statement. This is all that § 8.9–404 requires. Crestar's argument would invalidate every termination statement it has filed on its own printed form and place in jeopardy liens acquired by other creditors in reliance on Crestar's termination statements.

█ Crestar's second ground for retaining its security interest is also based on a misreading of the statute. Crestar relies on § 8.9–402(8): "A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading." This section deals with financing statements and amendments. The drafters of the U.C.C. did not include a similar exculpatory provision in § 8.9–404, which deals with termination statements, and the official comment does not disclose that § 8.9–402(8) was intended to apply also to § 8.9–404. The sole case Crestar cites on this issue, *In re Bumper Sales, Inc.*, 907 F.2d 1430 (4th Cir.1990), dealt with an inconsequential misnomer in a financing statement filed under § 8.9–402. 907 F.2d at 1434. The opinion does not refer to § 8.9–404 expressly or by implication.

We have no doubt that a court could apply equitable principles to relieve a party of a termination statement's minor error, such as an inconsequential misnomer, especially—unlike the situation here—in the absence of a trustee in bankruptcy.

■ Even if we did apply a harmless error standard to Crestar's filing, § 9–402(8) requires that errors be both "minor" and "not seriously misleading." Both statutory requirements must be given effect. It is an axiom of statutory construction that courts are obliged to give effect, if possible, to every word used by the legislature. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979); *USV Pharmaceutical Corp. v. Richardson*, 461 F.2d 223, 227 (4th Cir. 1972); *Tilton v. Commonwealth*, 196 Va. 774, 784, 85 S.E.2d 368, 374 (1955). One commentary concludes that the Code's drafters "intended two conditions and that subsection (8) does not save a financing statement which contains major but not misleading errors." 2 James J. White & Robert S. Summers, *Uniform Commercial Code* § 24–18 at 371 (3d ed. 1988). The liberality of the Code's filing provisions is not intended to vitiate the benefits of a simple and clear filing system, which tolerance of major errors would do. *In re Edwards Equip. Co.*, 46 B.R. 689, 691–92 (Bankr.W.D.Okla.1985).

A termination statement is a unique filing created by a different code section than the one governing financing statements and amendments. Its effect on a secured interest is dramatic and final. *See Koehring Co. v. Nolden (In re Pacific Trencher & Equip., Inc.)*, 735 F.2d 362, 365 (9th Cir.1984). Crestar's failure to identify the statement as PARTIAL RELEASE OF COLLATERAL and specifically identifying it as a TERMINATION statement cannot be considered a minor error.

In addition, Crestar's filing cannot pass the "not seriously misleading prong" of § 8.9–402(8). The stipulation of facts did not mention whether Crestar's filing was misleading. The bankruptcy court did not find, or even discuss, whether it was misleading; its opinion does not cite § 8.9–402(8). The district court mistakenly stated that the bankruptcy court had held that the statements were not seriously misleading for the purpose of § 8.9–402(8). Consequently, without considering any evidence other than the stipulation and the form, the district court followed what it perceived to be the bankruptcy court's conclusion and held that the statements were not seriously misleading. Whether this is considered a finding or, as the district court indicated, a conclusion of law, we cannot accept it.

On its face the filing does not disclose that it signifies only a partial release, as Crestar contends. The PARTIAL RELEASE OF COLLATERAL box was not checked. The release was written in a space on the form provided for "Description of collateral covered by original financing statement." When the text of the release is read with the text of the form, a potential creditor could conclude that the termination box was correctly checked because the two cranes constituted the "Description of collateral covered by the original financing statement," which Crestar called its "blanket security lien." Crestar added no statement that it retained a security interest on Kitchin's other assets. The decision of the clerk of the Circuit Court of Chesapeake to stamp Crestar's statement TERMINATED is evidence—and the only evidence bearing on this question—that the filing was misleading.

■ Crestar next argues that U.C.C. has adopted notice filing, a system which contemplates further inquiry to determine the scope of a security agreement. It relies on *Girard Trust Co. v. Strickler (In re Varney Wood Products, Inc.)*, 458 F.2d 435 (4th Cir.1972), and both the Virginia and Official Comments about § 8.9–402.

The difficulty with Crestar's argument is that *Varney* and the comments to § 8.9–402 refer only to financing statements, and not to termination statements. The purpose of notice filing, as explained in paragraph 2 of the Official Comments, is to give notice that the secured party may have an interest in the collateral. Prospective creditors must make further inquiries about the complete state of affairs. Notice filing relieves the secured party of the necessity of refiling on each of a series of transactions in a continuing arrangement where inventory, accounts, and chattel papers may change from day to day. Also, a financing statement may cover after-ac-

quired property and future advances under security agreements, which need not be mentioned in the financing statement.

There is no similar comment regarding notice filing with respect to § 8.9–404. Nor need there be. In the context of termination, there is no necessity for the type of notice required by § 8.9–402. The secured creditor can comply with § 8.9–404 by simply providing a statement to the effect that it no longer claims a security interest under the financing statement identified by number on the termination statement. Crestar complied with these requirements by designing a form into which the requisite number was inserted and by providing a box to be checked for TERMINATION. There is no suggestion in § 8.9–404 or its comments that a prospective creditor must make further inquiry to the secured party of the kind contemplated in § 8.9–402.

## IV

The trustee relies primarily on *Koehring Co. v. Nolden (In re Pacific Trencher & Equip., Inc.)*, 735 F.2d 362 (9th Cir.1984). In that case, the creditor also intended a partial release but submitted its own multipurpose form on which it had erroneously checked "Termination." Also on the form was a detailed description of the specific collateral to which the partial release was intended to apply. The creditor sought a judgment that the statement terminated only its security interest in the collateral described. 735 F.2d at 364.

The court rejected the argument that the form released only the specified collateral. It cited the language on the form that read: "TERMINATION—The Secured Party certifies that the Secured Party *no longer claims a security interest under the Financing Statement* bearing the file number above." 735 F.2d at 364 (emphasis added by Ninth Circuit). "Given the language of the form," the court held, "there is no possibility of construing a partial termination of items listed in a financing statement." 735 F.2d at 364. Because "[t]he clause [was] unambiguous as a matter of law," the listing of specific items was "mere surplusage." 735 F.2d at 364–65.

"This court is unpersuaded that there is any possibility of a 'partial' termination if the wrong box has been checked." 735 F.2d at 365.

As it successfully did in the district court, Crestar seeks to distinguish its situation from that in *Pacific Trencher* because Crestar's form did not include the detailed description of the effect of the "TERMINATION" box included on the form at issue in *Pacific Trencher*. Though the language on Crestar's form is unquestionably less verbose than that on the *Pacific Trencher* form, the message both forms convey is the same. Checking a box marked TERMINATION on Crestar's form standing alone would signify very little. But when the check is read with the printed language of the Crestar form, it is clear that the filing is a termination statement conforming to requirements of a termination statement in § 8.9–404. In effect, Crestar claims that its termination forms should be construed in favor of Crestar, because they do not contain a notation of the effect of checking the TERMINATION box. Acceptance of Crestar's argument would defeat the purposes of the U.C.C. by serving as a trap for unwary creditors who rely on the bank's termination statements.

The trustee also relies on *Rock Hill Nat'l Bank v. York Chem Indus., Inc. (In re York Chem. Indus., Inc.)*, 30 B.R. 583, 586 (Bankr.D.S.C.1983). In that case, as here, a bank inadvertently filed a termination statement. 30 B.R. at 585. The bankruptcy court denied relief from the automatic stay because the hypothetical lien of a debtor in possession provided by 11 U.S.C. §§ 1107(a) and 544(a)(1) took priority. 30 B.R. at 586. Crestar argues that *York* is distinguishable because the creditor had filed nothing but a "pure termination statement." Crestar is mistaken. The creditor had a financing statement on record. 30 B.R. at 584. The bankruptcy court found that all parties agreed that neither the debtor nor the creditor intended this financing statement to be terminated. 30 B.R. at 585. The bankruptcy court held that the creditor was responsible for terminating its financing statement "albeit unin-

tentionally and inadvertently." The court declined "to recreate a perfected security interest" and denied relief from the stay. 30 B.R. at 586.

Another case reaching the same result as *Pacific Trencher* and *York* is *J.I. Case Credit Corp. v. Foos,* 11 Kan.App.2d 185, 717 P.2d 1064 (1986), which dealt with a mistaken termination statement in the context of competitive liens, not bankruptcy. 11 Kan.App.2d 185, 717 P.2d at 1065. A subsequent lien creditor was entitled to prevail over a prior lienholder that inadvertently filed a termination statement releasing its lien. The knowledge of the debtor that his debt had not been paid was irrelevant. 11 Kan.App.2d at 189, 717 P.2d at 1067. *See also* William D. Hawkland, *Uniform Commercial Code Series* § 9–404:01 (Callaghan Supp.1991).

*In re Burkhard,* 6 U.C.C. Rep. Serv. (Callaghan) 244 (Bankr.S.D.Ohio 1969), cited by neither party, at first blush seems to support Crestar. After the debtor filed a petition in bankruptcy, a bank that had filed a financing statement called upon the guarantor of the debtor's note to pay the debt. The guarantor paid, and the bank endorsed the note without recourse and mistakenly filed a termination statement. 6 U.C.C. Rep. Serv. at 246. Concerned about the loss to the innocent guarantor, the bankruptcy court held that since the termination statement was filed after the trustee's statutory lien attached, the mistake should be rectified in equity and the guarantor should prevail over the trustee. The court reasoned that "it would be unjust enrichment to permit [the trustee] to benefit by the payment of a third party." 6 U.C.C.Rep. Serv. at 248. The court did not venture an opinion what the outcome would have been if the bank, rather than the guarantor, had remained the creditor, other than to note that third parties were not privy to any "malfeasance" of the bank. 6 U.C.C.Rep. Serv. at 247. But the court cautioned in dictum that if the termination statement had been filed before the trustee's statutory lien had attached, "there is a grave possibility that the trustee's lien might be unimpeachable." 6 U.C.C.Rep. Serv. at 248. This dictum and

the factual differences render the case of questionable value to Crestar.

### V

Crestar next argues that the filing should be reformed because of mutual mistake. The cases it cites are inapplicable here. Even though Crestar alone made the mistake, Crestar's argument for reformation would be strong against Kitchin itself, had it not filed for bankruptcy. *See* Dan B. Dobbs, *Handbook on the Law of Remedies* § 11.6 at 748 & n. 19 (1973). However, in this case, the mistake was made in the context of a system designed to give notice to third parties who, by definition, could not be party to the mistake. In addition, the mutuality of the mistake, if any, has been destroyed by the intervening Chapter 7 petition in bankruptcy, which gave the trustee the avoiding powers of a hypothetical lien creditor without knowledge of agreements between the parties. 11 U.S.C. § 544(a). Under the terms of the statute, the trustee cannot be considered a party to the mistake, nor need he prove prejudice. In the cases dealing with inadvertently filed termination statements that were contested by a trustee in bankruptcy, or a debtor in possession, courts have denied equitable relief to the improvident creditors. *See, e.g., Pacific Trencher,* 735 F.2d at 354, *York,* 30 B.R. at 585–86. Crestar cites no case to the contrary.

### VI

In sum, we conclude that neither the provisions of the Bankruptcy Code and the U.C.C., nor equitable principles, entitle Crestar's financing statement to prevail over the trustee's statutory lien. The judgment of the district court modifying the automatic stay is reversed, and the case is remanded for reinstatement of the stay.

REVERSED AND REMANDED.

NIEMEYER, Circuit Judge, dissenting:

The majority opinion interprets an ambiguous check mark entered in a box on a financing statement form to reach a result intended by neither of the parties to the

security agreement and directly in conflict with an explanation given for the check mark elsewhere in the same financing statement form. The effect of the court's interpretation is to reverse the decisions of both the bankruptcy court and the district court and to deprive Crestar Bank of a previously viable secured position in the debtor's bankruptcy estate.

All parties agree that prior to June 1990, Crestar Bank had, by reason of a properly filed financing statement, a valid and enforceable security interest in the assets of the debtor, which had been acknowledged repeatedly by the parties before then. Only three months earlier, Crestar Bank loaned the debtor $1.2 million in reliance on the viability of the financing statement which secured repayment of the loan. When the debtor fell into difficult financial circumstances, it sought protection from creditors under Chapter 11 of the Bankruptcy Code. At that time the bank was still a secured creditor with a valid and enforceable security interest in the debtor's real estate, furniture, fixtures, equipment, inventory, accounts receivable, and personal property.

In June 1990, when the debtor was able to sell two cranes, Crestar Bank agreed to release its security interest with respect to them. The arrangement was intended to permit the debtor to convey free title to the cranes to the purchaser and to enable the debtor to reduce the secured loan owed to the bank. Pursuant to the agreement of the parties, the bank filed an executed form document with the Virginia Corporation Commission and with the Clerk of the Circuit Court of Chesapeake, Virginia by which it intended to terminate the security interest on the two cranes while retaining its secured position in the debtor's remaining property. The form provided a number of boxes which could be checked to indicate the nature of the action being taken in filing the form, including two boxes labeled: "PARTIAL RELEASE OF COLLATERAL" and "TERMINATION." Because Crestar Bank checked the "TERMINATION" box, the court has interpreted the filing to constitute a waiver of the bank's entire blanket security interest which theretofore was recognized by all parties, even though the express language of the document limited the termination to two specific items of property as follows:

> The following two (2) specific pieces of equipment are to be released under Crestar's blanket security lien:
>
> (1) Crane ID # LC700 SN C19006
>
> (2) Crane ID # LRT220 SN 79055[.]

While the check in the box labeled "TERMINATION" would, absent any further explanation, support the majority's conclusion, when the text of the explanation is considered, the reasonable interpretation leads to the conclusion, also reached by the bankruptcy court and the district court, that the termination indicated by the check mark applied only to the two specified pieces of equipment.

It is remarkable that none of the parties argues or even suggests that the result imposed by the majority was the intent of the parties, and there is not one shred of evidence that any potential creditors read the document any way other than to constitute a termination only with respect to the two specified pieces of equipment. If the box checked "TERMINATION" was an error, it was one of form which was clarified contemporaneously on the same document. I respectfully submit that we should not be so quick to restructure and restate the affairs of the parties in a manner contrary to their intent on so technical an argument, and the law does not require such a technically derived result.

The bankruptcy court is a court of equity directed to apply Virginia law to determine whether the document is to be interpreted to constitute a total release of the bank's security interest. The Virginia statute that directs how financing statements are to be prepared and filed to create a valid and enforceable security interest provides that "[a] financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading." Va.Code Ann. § 8.9–402(8) (Michie 1991). This provision reflects Virginia's system of " 'notice filing' which contemplates further

inquiry in order to determine whether a given asset is covered by a security agreement." *Girard Trust Co. v. Strickler (In re Varney Wood Products, Inc.)*, 458 F.2d 435, 437 (4th Cir.1972). *See also Hixon v. Credit Alliance Corp.*, 235 Va. 466, 369 S.E.2d 169, 172 (1988). The issue, to be determined on a case by case basis, is whether a "reasonably diligent searcher" would be mislead by the error or irregularity. *Unsecured Creditors Comm. v. Marepcon Fin. Corp. (In re Bumper Sales, Inc.)*, 907 F.2d 1430, 1434–35 (4th Cir.1990).

It can hardly be argued that the checkmarking error, if considered as such, is "seriously misleading," particularly when the descriptive language limits the termination to two specific pieces of equipment which are to be released from "Crestar's *blanket security lien*" (emphasis added). The intent of the bank's action was clearly understood by the debtor and the bank and the only matter to evaluate is whether it had the likely effect of placing a reasonably diligent third-party searcher on notice that particular assets were covered by a security agreement. Because the financing statement at a minimum alerted the searcher to the need for further inquiry, the error must be viewed as "not seriously misleading" under § 8.9–402(8). *See Hixon*, 369 S.E.2d at 171–72.

Because the language forgiving insubstantial errors is not repeated in every other provision which relates to a financing statement, including the provision for its termination, the majority concludes that the language which relieves the parties of minor errors does not apply to terminations. *But see Koehring Co. v. Nolden (In re Pacific Trencher & Equip., Inc.)*, 735 F.2d 362, 364 (9th Cir.1984) (applying an identical provision of the California Commercial Code to termination statements). If this were the standard for interpretation, an equally technical argument could be applied to support the bank's position that a termination cannot be effective unless it states *in haec verba* that the secured party "no longer claims a security interest." *See* Va.Code Ann. § 8.9–404. I do not, however, suggest that technical an application either.

While the Ninth Circuit in *Pacific Trencher*, 735 F.2d at 364–65, interpreted a check mark in a box labeled "TERMINATION" as a waiver of the full scope of the financing statement to which it referred, the conclusion is justified by totally different facts. The termination box checked there was not limited by explanatory language, as is the case here, but rather included the specific statement that "the Secured Party ... no longer claims a security interest under the Financing Statement," the exact language expressed by the analogous Uniform Commercial Code provision to effect a termination. *See* Va. Code § 8.9–404. After concluding that this language, when viewed from the standpoint of a potential creditor reviewing the records, was "seriously misleading," the court determined that the perfection in all the items listed in the financing statement, and not merely those listed in an attachment, was destroyed. *Pacific Trencher*, 735 F.2d at 364. The language of that case hardly presents an applicable precedent to conclude that the language in this case limiting the termination to two specific pieces of equipment must also effect a release of Crestar's entire blanket security agreement.

In short, I find that the checked box labeled "TERMINATION" was unambiguously explained by added text to cover only two specified cranes. If the fact that the bank did not instead check the box labeled "PARTIAL RELEASE" constituted an error, the error was "minor" and "not seriously misleading" as excused by Va. Code § 8.9–402(8). In bankruptcy, we must apply equitable principles and hold the trustee to similar principles. The bankruptcy estate received the property of the debtor subject to a valid and enforceable security interest in the debtor's property. The trustee should not now, by this technical argument, be permitted to avoid this arrangement which was validly agreed to by the parties.

I would affirm the judgment of the district court which affirmed the judgment of

the bankruptcy court, and I therefore respectfully dissent.