In re ADVANCE INSULATION & SUPPLY, INC., et al., Debtors.

FIRST AMERICAN BANK OF MARYLAND, Plaintiff,

v.

Michael G. RINN, Trustee, Defendant.

Michael G. RINN, Trustee, Plaintiff,

v.

FIRST AMERICAN BANK OF MARYLAND, Defendant.

Michael G. RINN, Trustee, Plaintiff,

v.

FIRST AMERICAN BANK OF MARYLAND and Maryland National Bank, Defendants.

Bankruptcy Nos. 92–5–3450–JS to 92–5–3453–JS.
Adv. Nos. 93–5034–JS, 93–5133–JS and 93–5304–JS.

United States Bankruptcy Court, D. Maryland.

June 28, 1994.

Paul D. Trinkoff, Tydings & Rosenberg, Baltimore, MD, for Michael G. Rinn, Trustee.

Lawrence J. Gebhardt, Gebhardt & Smith and Edmund A. Goldberg, Office of the U.S. Trustee, Baltimore, MD, for First American Bank of Maryland and Maryland Nat. Bank.

*MEMORANDUM OPINION DISMISSING TRUSTEE'S COMPLAINTS [ADV. NOS. 93–5133–JS AND 93–5304–JS AND DENYING TRUSTEE'S MOTION FOR SUMMARY JUDGMENT [ADV. NO. 93–5034–JS*

JAMES F. SCHNEIDER, Bankruptcy Judge.

*FINDINGS OF FACT*

1. On May 5, 1992, involuntary Chapter 7 bankruptcy petitions were filed in this Court against Advance Insulation & Supply, Inc., Baltimore Home Insulation, Inc., Colonial Insulation & Supply, Inc., and Wade Insulation, Inc. The debtors consented to the involuntary petitions and Chapter 7 orders for relief were entered in due course.

2. On September 15, 1992, Michael G. Rinn was appointed Chapter 7 trustee for the debtors' jointly-administered cases.

3. Baltimore Home Insulation, Inc. was a Maryland corporation; Advance Insulation & Supply, Inc., and Colonial Insulation, Inc., were Virginia corporations; and Wade Insulation, Inc. was a Delaware corporation. The four debtors were wholly-owned subsidiaries of Ruppert Brothers of Maryland, Inc., a Maryland corporation. The parent corporation acted as a holding company for the assets of the debtors. The debtors were engaged as contractors in the business of residential insulation and the installation of windows and doors.

4. Before 1989, Maryland National Bank financed the operations of Ruppert Brothers and its subsidiaries by various credit transactions, including loans and a revolving line of credit, secured by perfected first security interests in all the existing and after-acquired inventory of Ruppert Brothers and in all the existing and after-acquired accounts receivable, instruments, chattel paper, documents, general intangibles and proceeds of the subsidiaries. Maryland National perfected its security interests by the filing of financing statements in Maryland, Virginia and Delaware. To date, the said financing statements have not been released of record.

5. On January 6, 1989, First American Bank of Maryland extended credit to Ruppert Brothers in the principal amount of $5.5 million, in the form of a $3 million line of credit, a $2 million term loan, and a $500,000 loan for the purchase of automobiles. Of the $5.5 million, $4.05 million was paid directly to Maryland National Bank to retire the debt owed by Ruppert Brothers, according to the intention of the parties. The $3 million line of credit and $300,000 of the $2 million term loan paid off a $3.3 million balance due on the Maryland National line of credit. The remainder of the $2 million term loan paid off the $750,000 balance of the Maryland National term loan, with the $950,000 residue designated as general working capital and start-up costs for a new franchise in Delaware. Thus, the only funds actually received by Ruppert Brothers as a result of the various First American credit transactions was $1,450,000.

6. The debtors and other corporations and individuals were guarantors of the various credit transactions made by First American as lender to Ruppert Brothers, pursuant

to an unconditional guaranty dated January 6, 1989.

7. According to the terms of its loan documents and commitment letter, First American intended that it be granted perfected, first priority security interests in all the existing and after-acquired assets of Ruppert Brothers and the debtors.

8. Ruppert Brothers granted the required security interests in all its assets to First American Bank at the time of the closing on the loans and line of credit, but more than three years passed before the debtors executed such security interests in favor of the Bank on February 7, 1992. The Bank allegedly perfected its security interests in the debtors' assets by the filing of financing statements on February 12, 1992.

9. On March 25, 1992, within 90 days of the filing date, the debtors sold all of their tangible assets by bulk sales that produced proceeds totalling $755,043.82, according to schedules filed in this Court by the debtors. The trustee currently holds net proceeds from the sales in an undisclosed amount.

*Complaint No. 1—Adv.Proc. No. 92–5034*

10. On January 26, 1993, First American Bank sued the trustee for the turnover of funds held by him and for a declaratory judgment that First American holds a perfected, first priority security interest in the funds as proceeds of the debtors' collateral by reason of the doctrine of equitable subrogation. The trustee filed motions to dismiss and for summary judgment.

*Complaint No. 2—Adv.Proc. No. 93–5133*

11. On March 1, 1993, the trustee sued First American Bank to avoid its liens pursuant to §§ 544, 547 and 550 of the Bankruptcy Code. First American filed a counterclaim based upon the same cause of action set forth in Complaint No. 1. The trustee moved to dismiss the counterclaim.

*Complaint No. 3—Adv.Proc. No. 93–5304*

12. On June 21, 1993, the trustee sued First American Bank and Maryland National Bank for breach of contract, tortious interference with contractual relations, violation of automatic stay and for a permanent injunction based upon the failure and refusal of the defendants to terminate the financing statements of Maryland National Bank in the debtors' collateral. The defendants filed a motion to dismiss, or in the alternative, for summary judgment.

For the reasons that follow, Complaints Nos. 2 and 3 will be dismissed, and the trustee's motions to dismiss and for summary judgment in Complaint No. 1 will be denied.

*CONCLUSIONS OF LAW*

■ 1. First American's lawsuit (Complaint No. 1) asserts its secured claim to cash proceeds generated from pre-petition bulk sales of the debtors' assets now held post-petition by the trustee.

Although the material facts are not in dispute in Complaint No. 1, neither side is entitled to judgment as a matter of law. *Miller v. Federal Deposit Ins. Corp.*, 906 F.2d 972, 973 (4th Cir.1990).

*PROCEEDS*

2. In order to recover on Complaint No. 1, First American must do more than merely assert that its security interests against the debtors' collateral relate back to Maryland National's perfected security interests. As indicated in Finding of Fact No. 9, the trustee is holding net proceeds from pre-petition bulk sales of all of the debtors' tangible assets. In order to be entitled to these funds, First American must be able to prove that the funds are "proceeds" of its collateral.

3. Section 9–306 of the Maryland Commercial Code provides:

§ 9–306. "Proceeds"; secured party's rights on disposition of collateral.

(1) "Proceeds" includes whatever is received upon the sale, exchange, collection, or other disposition of collateral or proceeds. Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement. Money, checks, deposit accounts, and the like are "cash proceeds." All other proceeds are "noncash proceeds."

(2) Except where this title otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the dis-

position was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

(3) The security interest in proceeds is a continuously perfected security interest if the interest in the original collateral was perfected but it ceases to be a perfected security interest and becomes unperfected ten days after receipt of the proceeds by the debtor unless

(a) A filed financing statement covers the original collateral and the proceeds are collateral in which a security interest may be perfected by filing in the office or offices where the financing statement has been filed and, if the proceeds are acquired with cash proceeds, the description of collateral in the financing statement indicates the types of property constituting the proceeds; or

(b) A filed financing statement covers the original collateral and the proceeds are identifiable cash proceeds; or

(c) The security interest in the proceeds is perfected before the expiration of the ten-day period.

Except as provided in this section, a security interest in proceeds can be perfected only by the methods or under the circumstances permitted in this title for original collateral of the same type.

(4) In the event of insolvency proceedings instituted by or against a debtor, a secured party with a perfected security interest in proceeds has a perfected security interest only in the following proceeds:

(a) In identifiable noncash proceeds and in separate deposit accounts containing only proceeds;

(b) In identifiable cash proceeds in the form of money which is neither commingled with other money nor deposited in a deposit account prior to the insolvency proceedings;

(c) In identifiable cash proceeds in the form of checks and the like which are not deposited in a deposit account prior to the insolvency proceedings; and

(d) In all cash and deposit accounts of the debtor in which proceeds have been commingled with other funds, but the perfected security interest under this paragraph (d) is

(i) Subject to any right of setoff; and

(ii) Limited to an amount not greater than the amount of any cash proceeds received by the debtor within ten days before the institution of the insolvency proceedings less the sum of

(1) The payments to the secured party on account of cash proceeds received by the debtor during such period, and

(2) The cash proceeds received by the debtor during such period to which the secured party is entitled under paragraphs (a) through (c) of this subsection (4).

(5) If a sale of goods results in an account or chattel paper which is transferred by the seller to a secured party, and if the goods are returned to or are repossessed by the seller or the secured party, the following rules determine priorities:

(a) If the goods were collateral at the time of sale for an indebtedness of the seller which is still unpaid, the original security interest attaches again to the goods and continues as a perfected security interest if it was perfected at the time when the goods were sold. If the security interest was originally perfected by a filing which is still effective, nothing further is required to continue the perfected status; in any other case, the secured party must take possession of the returned or repossessed goods or must file;

(b) An unpaid transferee of the chattel paper has a security interest in the goods against the transferor. Such security interest is prior to a security interest asserted under paragraph (a) to the extent that the transferee of the chattel paper was entitled to priority under § 9–308;

(c) An unpaid transferee of the account has a security interest in the goods against the transferor. Such security interest is subordinate to a security interest asserted under paragraph (a); and

(d) A security interest of an unpaid transferee asserted under paragraph (b) or

(c) must be perfected for protection against creditors of the transferor and purchasers of the returned or repossessed goods. (An.Code 1957, art. 95B, § 9–306; 1975, ch. 49, § 2; 1980, ch. 824.)

Md.Com.Law I Code Ann. § 9–306 (1992).

4. Section 9–306(4) has been held to govern a secured creditor's claim to pre-petition proceeds of pre-petition collateral. *Unsecured Creditors Comm. v. Marepcon Finan. Corp. (In re Bumper Sales, Inc.)*, 907 F.2d 1430 (4th Cir.1990); 9 Hawkland, Lord & Lewis U.C.C. Series § 9–306:05 54 (1991).

5. The record does not disclose the identity of the debtors' tangible assets that were sold or as to the source of all the funds now in the trustee's possession. Complaint No. 1 is devoid of details regarding the sales and First American Bank's entitlement to "proceeds" pursuant to § 9–306(4). For these reasons, the complaint must be tried in order to determine First American's entitlement to the funds.

*SUBROGATION AS A DEFENSE TO THE TRUSTEE'S AVOIDANCE POWERS*

■ 6. The trustee's avoidance powers which he has invoked in these complaints are set forth in Sections 544, 547 and 550 of the Bankruptcy Code, as follows:

Section 544. Trustee as lien creditor and as successor to certain creditors and purchasers.

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

(b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544 (1993).

.    .    .    .    .

Section 547. Preferences.

(a) In this section—

(1) "inventory" means personal property leased or furnished, held for sale or lease, or to be furnished under a contract for service, raw materials, work in process, or materials used or consumed in a business, including farm products such as crops or livestock, held for sale or lease;

(2) "new value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation;

(3) "receivable" means right to payment, whether or not such right has been earned by performance; and

(4) a debt for a tax is incurred on the day when such tax is last payable without penalty, including any extension.

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition;  or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider;  and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor;  and

(B) in fact a substantially contemporaneous exchange;

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee;  and

(C) made according to ordinary business terms;

(3) that creates a security interest in property acquired by the debtor—

(A) to the extent such security interest secures new value that was—

(i) given at or after the signing of a security agreement that contains a description of such property as collateral;

(ii) given by or on behalf of the secured party under such agreement;

(iii) given to enable the debtor to acquire such property;  and

(iv) in fact used by the debtor to acquire such property;  and

(B) that is perfected on or before 10 days after the debtor receives possession of such property;

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest;  and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;

(5) that creates a perfected security interest in inventory or a receivable or the proceeds of either, except to the extent that the aggregate of all such transfers to the transferee caused a reduction, as of the date of the filing of the petition and to the prejudice of other creditors holding unsecured claims, of any amount by which the debt secured by such security interest exceeded the value of all security interests for such debt on the later of—

(A)(i) with respect to a transfer to which subsection (b)(4)(A) of this section applies, 90 days before the date of the filing of the petition;  or

(ii) with respect to a transfer to which subsection (b)(4)(B) of this section applies, one year before the date of the filing of the petition;  or

(B) the date on which new value was first given under the security agreement creating such security interest.

(6) that is the fixing of a statutory lien that is not avoidable under § 545 of this title;  or

(7) if, in a case filed by an individual debtor whose debts are primarily con-

sumer debts, the aggregate value of all property that constitutes or is affected by such transfer is less than $600.

(d) The trustee may avoid a transfer of an interest in property of the debtor transferred to or for the benefit of a surety to secure reimbursement of such a surety that furnished a bond or other obligation to dissolve a judicial lien that would have been avoidable by the trustee under subsection (b) of this section. The liability of such surety under such bond or obligation shall be discharged to the extent of the value of such property recovered by the trustee or the amount paid to the trustee.

(e)(1) For the purposes of this section—

(A) a transfer of real property other than fixtures, but including the interest of a seller or purchaser under a contract for the sale of real property, is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee; and

(B) a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

(2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made—

(A) At the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time;

(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or

(C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—

(i) the commencement of the case; or

(ii) 10 days after such transfer takes effect between the transferor and the transferee.

(3) For the purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred.

(f) For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

(g) For the purposes of this section, the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section, and the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section.

11 U.S.C. § 547 (1993).

.      .      .      .      .

Section 550. Liability of transferee of avoided transfer.

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under section (a)(2) of this section from—

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or

(2) any immediate or mediate good faith transferee of such transferee.

(c) The trustee is entitled to only a single satisfaction under subsection (a) of this section.

(d)(1) A good faith transferee from whom the trustee may recover under subsection (a) of this section has a lien on the property recovered to secure the lesser of—

(A) the cost, to such transferee, of any improvement made after the transfer, less the amount of any profit realized by or accruing to such transferee from such property; and

(B) any increase in the value of such property as a result of such improvement, of the property transferred.

(2) In this subsection, "improvement" includes—

(A) physical additions or changes to the property transferred;

(B) repairs to such property;

(C) payment of any tax on such property;

(D) payment of any debt secured by a lien on such property that is superior or equal to the rights of the trustee; and

(E) preservation of such property.

(e) An action or proceeding under this section may not be commenced after the earlier of—

(1) one year after the avoidance of the transfer on account of which recovery under this section is sought; or

(2) the time the case is closed or dismissed.

11 U.S.C. § 550 (1993).

7. "While federal law confers on the trustee the power to avoid some transfers and obligations of the debtor, state law controls the exercise of this power." *Crestar Bank v. Neal (In re Kitchin Equipment Co. of Virginia, Inc.)*, 960 F.2d 1242, 1245 (4th Cir.1992).

■ 8. State law governs the determination of property interests in bankruptcy cases. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Universal Coops., Inc. v. FCX, Inc. (In re FCX, Inc.)*, 853 F.2d 1149 (4th Cir.1988), *cert. denied*, 489 U.S. 1011, 109 S.Ct. 1118, 103 L.Ed.2d 181 (1989).

9. The trustee's lawsuit against First American (Complaint No. 2) seeks the avoidance of First American's pre-petition security interest which was allegedly perfected during the 90–day preference period. The fully-secured claim of Maryland National Bank, properly perfected years before the filing of the debtors' bankruptcy petitions, would not have been avoidable by the trustee. Having fully satisfied Maryland National's liens outside of the preference period, First American claims that its liens are likewise invulnerable to the trustee's attack by reason of the doctrine of equitable subrogation. This Court agrees.

10. First American Bank was subrogated to the properly perfected first priority security interests of Maryland National Bank in the debtors' collateral, before the bulk sales. That is, subrogation operated as an assignment of the interests held by Maryland National Bank in the collateral to First American Bank. *Cf. French Lumber Co. v. Commercial Realty & Fin. Co.*, 346 Mass. 716, 195 N.E.2d 507 (1964) The *French Lumber* court held that a lender that refinanced a priority security interest in an automobile was subrogated to the priority of the creditor it paid, as against an intermediate secured lender, even in the absence of a formal assignment. The court made note of § 9–302(2), but held that the enactment of the U.C.C. did not repeal the common law right of subrogation.

■ 11. "If a secured party assigns a perfected security interest, no filing under this title is required in order to continue the perfected status of the security interest against creditors of and transferees from the original debtor." Md.Com.Law I Code Ann. § 9–302(2) (1992); Va.Code Ann. § 8.9–302(2) (Michie 1991); Del.Code Ann. tit. 6, § 9–302(2) (1993). In addition, no formal filing of the assignment is required to continue perfection. Md.Com.Law I Code Ann. § 9–405(2) (1992); Va.Code Ann. § 8.9–405(2) (Michie Supp.1993); Del.Code Ann. tit. 6, § 9–405(2) (1993).

■ 12. Even in the absence of a formal assignment, the purpose of the notice filing system under the Uniform Commercial Code is to notify subsequent creditors that a secured party may have an interest in the collateral. *Crestar Bank v. Neal (In re Kitchin Equip. of Va., Inc.)*, 960 F.2d 1242, 1247 (4th Cir.1992). At all relevant times, the world had notice of the interests of Maryland National Bank, to which First American

Bank was later subrogated, by virtue of Maryland National Bank's properly-filed financing statements. These financing statements were not released and are the subject of Complaint No. 3. As of February 12, 1992, First American Bank allegedly recorded its own financing statements, giving its own notice to the world of its interests in the collateral.

13. "If a security interest is originally perfected in any way permitted under this title and is subsequently perfected in some other way under this title, without an intermediate period when it was unperfected, the security interest shall be deemed to be perfected continuously for the purposes of this title." Md.Com.Law I Code Ann. § 9–303(2) (1992); Va.Code Ann. § 8.9–303(2) (Michie 1991); Del.Code Ann., tit. 6, § 9–303(2) (1993).

14. Maryland recognizes the doctrine of equitable subrogation, also known as legal subrogation, for which there must be "(1) ... a debt or obligation for which a party, other than the subrogee, is primarily liable, which (2) the subrogee, who is neither a volunteer nor an intermeddler, pays or discharges in order to protect his own rights and interests." *Security Ins. Co. v. Mangan,* 250 Md. 241, 247, 242 A.2d 482, 486 (1967), quoting *George L. Schnader, Jr., Inc. v. Cole Bldg. Co.,* 236 Md. 17, 23, 202 A.2d 326 (1963). Subrogation may not be applied "in circumstances where it would be inequitable to do so." *Finance Co. of America v. United States Fidelity and Guar. Co.,* 277 Md. 177, 185, 353 A.2d 249, 254 (1975). The enactment of Article 9 of the Uniform Commercial Code has not displaced the common law doctrine of subrogation. *Id.* at 183, 353 A.2d 249, Md.Com.Law I Code Ann. § 1–103 (1992).

15. The doctrine of subrogation as embraced by Virginia is very similar to that recognized in Maryland. Moreover, it has been stated that "[i]n no other jurisdiction has the doctrine been more firmly adhered to or more liberally expounded and applied, to meet the exigencies of particular cases, than in Virginia." *Federal Land Bank of Baltimore v. Joynes,* 179 Va. 394, 402, 18 S.E.2d 917, 920 (1942) (quoting Judge Whittle in

*Sands' Adm'r v. Durham,* 99 Va. 263, 267, 38 S.E. 145 (1901).) In Virginia, equitable subrogation "arises by operation of law where one having a liability, or right, or a fiduciary relation in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid." *Id.* at 401, 18 S.E.2d 917.

16. Similarly, subrogation has been recognized in Delaware under the following rule:

As a general rule, where one person's money has been used to pay liens or preferred claims against the property of another under such circumstances as to constitute unjust enrichment, subrogation is applicable and gives the plaintiff similar rights to those which the lienholder or preferred claimant had before the lien or claim was discharged.

*Olivere v. Taylor,* 31 Del.Ch. 53, 58, 65 A.2d 723, 726 (1949). Equitable subrogation seeks to prevent unjust enrichment. *Leiter v. Carpenter,* 26 Del.Ch. 85, 90, 22 A.2d 393 (1941). A party seeking the remedy of subrogation must not have acted as a volunteer. However, a third party that pays a prior claim to protect its interest is not deemed to be a volunteer. *Eastern States Petroleum Co., Inc. v. Universal Oil Products Co.,* 28 Del. Ch. 365, 374, 44 A.2d 11, 15 (1945) (where the Delaware Court of Chancery enunciated the doctrine of legal subrogation as found in Delaware but declined to apply it), *aff'd* 29 Del.Ch. 305, 49 A.2d 612 (1946). "Originally, [equitable subrogation] might have been largely confined to cases involving the relation of principal and surety, but it now has a much broader application; and when right and justice demand it the tendency is to extend, rather than to restrict its application." *Eastern,* 28 Del.Ch. at 375, 44 A.2d at 15.

17. Equitable subrogation will be applied as to the collateral that was located in Maryland, Virginia, and Delaware before the bulk sales. Although First American was not primarily liable for the debt owed by the debtor to Maryland National, First American Bank purposely paid the balance

due to Maryland National Bank in order to protect its own interests in the collateral under the terms of the loan, rather than as a volunteer. There are no intervening equities, and application of subrogation in this circumstance is not inequitable. It would be inequitable not to apply subrogation in this case. Negligence, standing alone, does not act as a bar to subrogation. *Federal Land Bank of Baltimore v. Joynes,* 179 Va. 394, 405, 18 S.E.2d 917, 921 (1942). Thus, any alleged negligence on the part of First American Bank for failing to timely perfect its interests does not bar the application of equitable subrogation, particularly when balanced against the inequitable windfall that the trustee would receive were subrogation not to be applied.

■ 18. As against Article 9 security interests, the trustee had the status of a lien creditor as of the date of the filing of the bankruptcy petition. 11 U.S.C. § 544(a)(1) (1993). In this case, the interests of First American Bank were perfected by virtue of Maryland National Bank's properly-recorded financing statements, subrogation, and First American Bank's own subsequently-recorded financing statements. The interests of First American Bank in the collateral, before the bulk sales, were immune to the trustee's avoiding powers under Sections 544 and 550 of the Bankruptcy Code.

19. "The plaintiff in a preference action bears the burden of proving all of the elements of a preference set forth in Section 547(b). 11 U.S.C. § 547(g)." *Wasserman v. Village Assocs. (In re Freestate Management Services, Inc.),* 153 B.R. 972, 979–80 (Bankr. D.Md.1993).

■ 20. Section 547(e)(2)(B) provides that "a transfer is made at the time such transfer is perfected, if such transfer is perfected after such 10 days." *Id.* If not perfected by the later of the commencement of the case or ten days after the transfer took effect between the transferee and the transferor, § 547(e)(2)(C) deems the transfer to have taken place "immediately before the date of the filing of the petition." *Id.* The transfer in this case was not perfected until February, 1992, which was three years after

the transfer took effect as to First American and the debtors.

21. The Fourth Circuit Court of Appeals stated in the case of *Vogel v. Russell Transfer, Inc.,* 852 F.2d 797, 798 (4th Cir.1988),

Section 547 defines certain transfers as preferences and empowers the trustee to avoid them. The grant of a security interest is a transfer within the definition of § 547 and the trustee may avoid it if it is not perfected in time. The perfection must be made, depending on the type of security interest, on or before ten days after either the transfer is made or the debtor acquires possession.

*Id.*

22. However, according to subrogation principles which this Court has found to be applicable, First American's security interests were actually renewals of the already-perfected security interests of Maryland National Bank, at least to the extent of the satisfaction of the prior liens in the amount of $4.05 million.

23. "The renewal of a lien or security interest is not a new transfer within the meaning of section 547 if it merely continues an existing interest; it does not diminish the collection of assets to be distributed among the general creditors." *Wind Power Systems, Inc. v. Cannon Fin. Group, Inc. (In re Wind Power Systems, Inc.),* 841 F.2d 288, 292 (9th Cir.1988), citing *Lancaster v. First Nat'l Bank of Greenville, Tenn. (In re Cloyd),* 23 B.R. 51 (Bankr.E.D.Tenn.1982). Therefore, in Complaint No. 2, the trustee is unable to prove that the perfection of First American's security interests was a transfer that occurred within the 90–day preference period before the filing of the bankruptcy petition, because of the transfer's relation back to the prior perfected liens of Maryland National.

24. Moreover, viewed as a whole, the transfer to First American in the instant case did not result in a diminution of the debtors' estates, at least to the extent of the $4.05 million used to satisfy Maryland National's security interests. The facts indicate that that sum, paid directly to Maryland National,

was designated for the specific purpose of satisfying the prior liens.

For all these reasons, Complaint No. 2 will be dismissed.

*Complaint No. 3*

25. Likewise, Complaint No. 3, filed by the trustee, will be dismissed. Its obvious purpose was to force Maryland National to release its liens to the supposed prejudice of First American in the other two complaints. Relying upon the case of *Crestar Bank v. Neal,* (*In re Kitchin Equipment Co. of Virginia, Inc.*), 960 F.2d 1242 (4th Cir.1992), (erroneously filed termination statement released secured creditor's lien against bankruptcy debtor's property), First American has argued that the viability of its security interests in the debtors' assets depends upon the continuing existence of Maryland National's liens of record. The trustee has argued that the liens, having been paid in full, should have been released by Maryland National and that the wrongful refusal to release them is causing damage to the debtors' estates for which Maryland National is liable. The Court finds the arguments of both sides to be without merit.

The fact that Maryland National's liens are currently of record is irrelevant to First American's subrogation argument. The parties agree that the prior liens had been properly recorded at the time First American satisfied them. Subrogation was sufficient to confer upon First American the same rights in the debtors' collateral as were held by Maryland National. By reason of First American's later recordation of its liens, which continue to be of record at this time, the presence of Maryland National's liens among the same records is superfluous and unnecessary for the protection of First American's priority, secured status. The opinion of the Fourth Circuit in the *Kitchin* case is distinguishable because it was not a subrogation case. Moreover, the trustee's argument that Maryland National should release its liens of record because they have been fully satisfied unwittingly supports First American's claim of subrogation to the priority position of Maryland National.

Second, there is no damage to the trustee or to the debtors' estates that can be shown to result from the continued existence of Maryland National's security interests on the record. The debtors are out of business and the trustee is holding cash proceeds from the bulk sales of all of the debtors' assets.

ORDER ACCORDINGLY.